[L. A. No. 2246.   In Bank.—March 14, 1910.]

## CITY OF LOS ANGELES (a Municipal Corporation), Appellant, v. SOUTHERN PACIFIC RAILROAD COMPANY (a Corporation), and SOUTHERN PACIFIC COMPANY (a Corporation), Respondents.

RAILROADS—MUNICIPAL GRANT OF USE OF STREET—DOUBLE TRACKS—CONSTRUCTION OF SINGLE TRACK—FUTURE POWER.—Under a municipal grant to a railroad company including the right to construct double tracks for its use in a street, the grantee is not compelled at the outset to construct double tracks in order to exercise such right, but he may at first construct a single track, and thereafter construct double tracks lawfully authorized by the municipal ordinance, at any time in the future, when it should become desirable for the necessities or convenience of operating its road.

ID.—DETERMINATION OF NECESSITY FOR USE.—The city council granting to a railroad company the right to use a street or streets is not required to determine what use of any street is absolutely necessary for the grantee; but it may simply determine what street or streets it would give to its use, within the limit of its power to grant the use, leaving it to the railroad company to determine what use shall be necessary, as time and experience shall demonstrate, not exceeding such use as might legally be granted to it by the council.

ID.—GRANT OF USE BEYOND LIMIT OF POWER—VALIDITY TO EXTENT OF LIMIT.—A grant by a city council to a railroad company of the use of a street beyond the limit of its power to grant the use is not absolutely void, but is valid and effective to the extent of the limit of the power conferred upon it by the legislature, and is void and ineffective only in so far as the use granted exceeds such limit. The grant gives to the company the right to make such use of the street as the city council could authorize.

ID.—CONSTRUCTION OF RAILROAD CORPORATION ACT OF 1861—MUNICIPAL GRANTS—EFFECT OF CIVIL CODE.—Section 21 of the Railroad Incorporation Act of 1861 (Stats. 1861, p. 607), authorizing any county, city, or town, by a certain vote of its legislative body, to grant to any railroad company "the use of any of the streets or highways which may be absolutely necessary to enable any such company to reach an accessible point for a depot" therein, "or to pass through the same on as direct a route as possible and accommodate the traveling and commercial interests thereof," read in connection with the other provisions of that act, conferred no greater power on a city council than is contained in sections 465 and 470 of the Civil Code. The effect of the adoption of the Civil Code was to supersede those provisions.

ID.—LEGISLATIVE AUTHORITY FOR ORDINANCE PASSED UNDER CODE.—The only legislative authority for a municipal ordinance passed after the

adoption of the code, making a grant of the use of a street to a railroad company incorporated prior to the code, is found in subdivision 5 of section 465 of the Civil Code, enumerating the powers of railroad corporations and empowering them "to construct their roads. across, along, or upon any . . . street, avenue or highway, . . . which the route of its road intersects, crosses or runs along," with the proviso that "the corporation shall restore the . . . street, avenue, highway . . . to its former state of usefulness as near as may be, or so that the railroad shall not unnecessarily impair its usefulness or injure its franchise."

ID.—AUTHORITY LIMITED TO PLACE FOR "ROAD" IN HIGHWAY.—The authority conferred by subdivision 5 of section 465 of the Civil Code, which is part of the original code unamended, is expressly limited to granting the railroad a right to use a street, avenue, or highway only as a place for its "road."

ID.—CODE PROVISION FOR MUNICIPAL GRANT—LIMITATION OF AUTHORITY —ADDITIONAL POWER NOT CONFERRED.—Section 470 of the Civil Code provides merely a limitation upon the authority to use a street, until a municipal grant thereof is made by two thirds of the legislative body of the town or city. But that section cannot be construed as conferring on such legislative body the power to authorize any greater use of the street than that declared in subdivision 5 of section 465 of that code.

ID.—MEANING OF "ROADS" UPON STREET OR HIGHWAY—SINGLE OR DOUBLE TRACK.—The term "roads" as used in subdivision 5 of section 465 of the Civil Code must be held to have meant the single- or double-track road referred to in subdivision 4 of that section as it then stood, providing that every corporation has power "to lay out its road not exceeding nine rods wide, and to construct and maintain the same, with a single or double track, and with such appendages and adjuncts as may be necessary for the convenient use of the same."

ID.—MEANING OF "APPENDAGES AND ADJUNCTS."—The "appendages and adjuncts," referred to in subdivision 4, are not stated as part of the road described therein or expressed in subdivision 5. They may be considered part of the road in a certain sense, and as involving the use of side-tracks, and connected with such structures as may be necessary to its convenient use, which the railroad company has the general power to construct and maintain in such places as it may lawfully acquire for that purpose.

ID.—CONSTRUCTION OF SUBDIVISIONS — THIRD TRACK IN STREET NOT PERMISSIBLE. — Considering subdivision 5 relating to the use of the road or streets and highways and as referring only to the road consisting of single or double track in subdivision 4, and not as having any reference to "appendages and adjuncts," and that subdivision 4 does not refer to streets and highways, it is evident the road in a street and highway is confined to the limit of a double track, and that no third track is permissible in a street or highway.

APPEAL from a judgment of the Superior Court of Los Angeles County.   D. K. Trask, Judge.

The facts are stated in the opinion of the court.

Leslie R. Hewitt, City Attorney, Lewis R. Works, Assistant City Attorney, John W. Shenk, Assistant City Attorney, and Howard Robertson, Deputy City Attorney, for Appellant.

J. W. McKinley, and Guy V. Shoup, for Respondents.

ANGELLOTTI, J.—This is an appeal from a judgment in favor of defendants.   The action was one in the nature of ejectment to oust defendants of possession of a portion of Alhambra Avenue in the city of Los Angeles, occupied by them with a railroad track.

Defendant Southern Pacific Company is in possession of all the railroad tracks of the other defendant, holding and operating trains thereover under a lease from such defendant. In the year 1874, the Southern Pacific Railroad Company constructed a single steam railroad track along the center line of the entire length of what is now known as Alhambra Avenue, and in the year 1895 it constructed a second track along the entire length of said avenue parallel to and about eleven feet south of the center line thereof, and has ever since maintained and used the said tracks as part of its railroad system. In the year 1902 it laid a third track along a portion of said avenue, south of the other two tracks, which it has ever since maintained and used for railroad purposes.   It is this third track that is in question here.   It appears that this track is not a part of the main traveled road of defendant, but is one running to the grounds occupied by the railroad repair shops, and that it is also used for siding and switching purposes.   It further appears that the effect of the maintenance of this track in its present condition is to prevent the use of the southerly half of the avenue by wagons or vehicles, but we do not deem this consideration material to a disposition of this appeal.

Defendants base their alleged right to such use of Alhambra Avenue upon an ordinance adopted by the city council of the city of Los Angeles on July 24, 1873, and approved by the mayor thereof on July 26, 1873.   So far as is material here,

that ordinance purported to "set apart" from the public highways of the city of Los Angeles all of San Fernando and Mission streets (the latter being now Alhambra Avenue) "to the unreserved and unrestricted use of the Southern Pacific Railroad Company," and to grant to said company "the right of way over and along the same, . . . for the building, maintaining and operating of its railroads by and through the track or tracks which said company shall deem it necessary to build along and over the same and with the privilege to said company to make such embankments and excavations upon said streets as shall be found necessary by the company's engineer to the proper construction of said railroad and its connections with said city." The only reservations or conditions therein were as to the right of the city to maintain zanjas, watercourses, sewers, water-pipes, and gas-pipes, and a provision as to the reversion in the event of non-use by the grantee.

There can be no room for doubt that such use of the street as is being made by the defendants is warranted by the terms of this ordinance. As said by the learned judge of the trial court: "This ordinance purports to grant . . . the 'unreserved and unrestricted use' of the street in question . . . 'for the building, maintaining and operating of its railroads by and through the track or tracks which said company shall deem it necessary to build along and over the same,' . . . excepting or reserving only certain rights as to ditches, street crossings, etc." The language of the ordinance is so plain and unambiguous in this regard as to leave no room for doubt as to the construction that must be placed upon it, and counsel for the city make no claim to the contrary.

It is established by the decision in *Workman* v. *Southern Pacific R. R. Co.*, 129 Cal. 536, [62 Pac. 185, 316], that the grantee was not compelled to construct at the outset all the tracks it had a right to lay in the street under its grant, but that, constructing a single track at first, it might construct any additional track or tracks authorized by the ordinance at any time in the future and "whenever it should become desirable from the necessities or convenience of operating its road." It was further determined by that case that the city council was not *required* to determine what use of the street was "absolutely necessary" for the grantee, but that it might simply determine what street or streets it would give to the

use of the railroad company, leaving to the railroad company the right to determine what use will be necessary, "as time and experience shall demonstrate." We are speaking, of course, of such "use" as might legally be granted by the council.

It is contended by appellants that the ordinance is absolutely void for the reason that it granted rights beyond the power of the council to give. It is not claimed that the council did not have the right to authorize a limited use of Alhambra Avenue by the grantee for railroad purposes, but it is insisted that it had no right to give the railroad company the practically absolute control of the whole street, or any such right therein as would authorize it to maintain the third track under the existing conditions.

It is clear, in view of the concession that the city council had the legal right to authorize a limited use by the railroad company of Alhambra Avenue, that the ordinance cannot be held to be absolutely void. As said by counsel for respondents, it is undoubtedly valid "to the extent of the right which was within the power of the council to grant," and as said by this court of another ordinance in *Workman* v. *Southern Pacific R. R. Co.*, 129 Cal. 536, [62 Pac. 185, 316], it gives "to the company the right to make such use of the street as the city could authorize."

Admittedly, the city council at that time had only such power in this regard as had been conferred on them by the legislature of the state. Their authority to grant such a use of the street by the railroad company as includes the maintenance of this third track must be found, so far as we have been able to ascertain, in sections 465 and 470 of the Civil Code, as the same stood at the time of the adoption of this ordinance, for no other provision of law bearing on the matter has been called or has come to our attention. Learned counsel for respondents cites certain sections of the act providing "for the incorporation of railroad companies," etc., approved May 20, 1861 (Stats. 1861, p. 607), under which the Southern Pacific Railroad Company was organized. The particular section of this act relied on is section 21, authorizing any county, city, or town, by a certain vote of its legislative body, to grant to any railroad company the use of any of the streets or highways which may be absolutely necessary "to enable any such

company to reach an accessible point for a depot" therein, "or to pass through the same on as direct a route as possible and accommodate the traveling and commercial interests thereof." Read in connection with the other provisions of the act this section conferred no greater authority on a city council than the provisions of the Civil Code above cited, and by which, we have no doubt, it was superseded upon the going into effect of the Civil Code, January 1, 1873. At the time of the adoption of this ordinance, the only legislative authorization of the use of a public street for railroad purposes was in subdivision 5 of section 465 of the Civil Code, the section enumerating the powers of railroad corporations. That subdivision purported to empower any such corporation to "construct their roads across, along, or upon any . . . street, avenue or highway . . . which the route of its road intersects, crosses or runs along, . . . ," with the proviso that "the corporation shall restore the . . . street, avenue, highway . . . to its former state of usefulness as near as may be, or so that the railroad shall not unnecessarily impair its usefulness or injure its franchise." This subdivision was a part of the original code and has never been amended. It is to be observed that this provision is limited to the "road" of a railroad corporation, in other words, that it grants to a railroad corporation the right to use a street, avenue, or highway only as a place for its "road." Nothing is said therein, as in the next preceding subdivision, to which we will refer later, about "such appendages and adjuncts as may be necessary for the convenient use of the same." This, as we have said, was the only purported legislative authorization of the use of any street for railroad purposes. Section 470 of the Civil Code as it then and has ever since stood, providing that "no railroad corporation must use any street, alley or highway, or any of the land or water, within any incorporated city or town, unless the right to so use the same is granted by a two-thirds vote of the town or city authority from which the right must emanate" is simply a limitation upon such authorization, making such a grant by the town or city authority a condition precedent to the exercise of the power given by the legislature so far as streets in incorporated cities or towns were concerned. (See *Arcata* v. *Arcata etc. R. R. Co.*, 92 Cal. 645, [28 Pac. 676].) In other words, section 470 of the Civil Code cannot be con-

strued as conferring on the "town or city authority" the power to authorize any use of a street greater than that declared by subdivision 5 of section 465 of the Civil Code. The city council of Los Angeles was limited, therefore, to a grant of the right described in said subdivision 5 of section 465 of the Civil Code, and in so far as the ordinance exceeded this, it was without legislative authority and ineffectual to give the railroad company any rights. The power given by that subdivision was simply "to construct their *roads* across, along or upon" a street or highway. What was meant by the term "roads" as therein used? We think it must be held to have meant the single or double-track road referred to in subdivision 4 of the same section as it stood at that time, and until amended after the judgment in this case (Stats. 1907, p. 99), and which provided that every railroad corporation has power "to lay out its road not exceeding nine rods wide, and to construct and maintain the same, with a single or double track, and with such appendages and adjuncts as may be necessary for the convenient use of the same." Doubtless the words "and with such appendages and adjuncts," etc., as used in this subdivision include necessary sidetracks, but this subdivision is not the one dealing with the right to use a street or highway. When we come to that subdivision (subd. 5), we find that right limited to the "road." The words "such appendages and adjuncts," etc., as used in subdivision 4, are words of broad import, including perhaps, as practically decided in *Southern Pacific R. R. Co.* v. *Raymond*, 53 Cal. 233, even workshops for repairing the cars and locomotives of the railroad company. In the absence of very clear language to that effect, we are not inclined to construe subdivision 5 as intending or authorizing any such use of a public highway by a railroad corporation as would include the occupation thereof for all such purposes as would be included in the term "such appendages and adjuncts," etc. While such appendages and adjuncts may be a part of the "road" in one sense of the word, they are not a part of the road as the same is described in subdivision 4. As there described, the appendages and adjuncts are things additional to the road proper, things necessary to the convenient use of the road, which the railroad corporation has the general power to construct and maintain in such places as it may lawfully acquire and occupy for

the purpose. The omission of any reference thereto in the subdivision relative to the use of public highways shows the intention to confine such use to the road itself, consisting of not exceeding two tracks. In our opinion the subdivision did not authorize the city council to allow a third track to be placed on the street. The amendment of 1907, heretofore referred to, allowing "one or more tracks" instead of a "single or double track" can, of course, have no effect in this case, which must be determined upon the law as it stood at the time of the adoption of this ordinance. The case of *Workman* v. *Southern Pacific R. R. Co.*, 129 Cal. 536, [62 Pac. 185, 316], relied on by learned counsel for respondents, is in point here only so far as already indicated. The question there was the right of the railroad company to lay a second track after it had constructed and operated for many years only a single track, under an ordinance giving it the right of way for its "track or tracks." This court said that under the law the railroad company was authorized to construct and maintain "a single or double track," and that the grant contained in the ordinance gave to the company "the right to make such use of the street as the city *could authorize,* and as circumstances may at any time thereafter require." (The italics are ours.) The case of *Arcata* v. *Arcata etc. R. R. Co.*, 92 Cal. 639, [28 Pac. 676], involved the question of the right of a board of trustees of an incorporated town to allow a *second* track, where it had previously given permission for a single track. The second track was called a "sidetrack" it is true, but we do not think this affects the question. What was said in the opinion in that case must be construed with reference to the precise question presented. We are satisfied that the opinion should not be construed as intimating either that the trustees had the right to permit a use not warranted by subdivision 5 of section 465 of the Civil Code, or that said subdivision authorizes the maintenance of a third track for any purpose. We have examined the cases cited from other states, and find none that affect the question here discussed.

No question is raised as to the right of the city of Los Angeles to maintain this action, if the occupancy by the defendants of the portion of the street occupied by the third track is unauthorized.

The judgment is reversed and the cause remanded for a new trial.

Shaw, J., Lorigan, J., Melvin, J., and Beatty, C. J., concurred.

Rehearing denied.