[L. A. No. 3522.   In Bank.—May 25, 1916.]

## SAN PEDRO, LOS ANGELES AND SALT LAKE RAILROAD COMPANY, Appellant, v. CITY OF LONG BEACH et al., Respondents.

MUNICIPAL CORPORATION—RAILROAD—USE OF CITY STREETS FOR TRACKS. Under sections 465 and 470 of the Civil Code, the right of a railroad company to use any street within an incorporated city for its tracks cannot exist unless it is granted by the proper city authority by a two-thirds vote.

ID.—CITY OF SIXTH CLASS—FRANCHISE FOR USE OF STREETS—METHOD OF GRANTING.—The method of granting such a franchise, in cities of the sixth class, is that prescribed by section 861 of the Municipal Corporation Act, as qualified by the terms of section 470 of the Civil Code requiring a two-thirds majority of the trustees.

ID.—PREMATURE PASSAGE OF ORDINANCE.—Under section 861 of the Municipal Corporation Act, an ordinance granting such a franchise could not be lawfully passed on the day of its introduction or within five days thereafter. Such an ordinance, attempted to be passed on the day of its introduction, is void.

ID. — CONSTRUCTION OF TURNOUT — INSUFFICIENT AUTHORIZATION BY TRUSTEES.—A railroad company acquired no authority to build and maintain a turnout in a street of such city, merely because an application for permission to construct the turnout was made to the board of trustees and was referred to it as a committee of the whole with power to act, and subsequently the members, after examining the proposed location, but not at any regular meeting, instructed the company's engineer to go ahead and build it.

ID. — CONSTRUCTION OF SIDING — INSUFFICIENT AUTHORIZATION. — The making by the company of an application to the board of trustees for permission to construct a siding in a street of the city, the reference of the application to the committee on public works, and the report of the committee to the board approving the application and recommending that it be granted, no further action being taken by the board, gave no authority for the construction and maintenance of such track.

Id.—Disincorporation of Municipality—Right of Railroad to Construct Tracks in Street.—A railroad company, having a franchise to maintain a single track along a city street, does not acquire, upon the disincorporation of the municipality, a vested right, at any time thereafter, when the city had been reincorporated, to add such turnouts and sidings as should be found necessary for its convenient use, under the provisions of subdivisions 4 and 5 of section 465 of the Civil Code.     . . . ..

Id. — Offer by State of Permission to Construct — Acceptance by Railroad.—That section does not give to every railroad company in the state a vested interest to lay its track in every street, and in all other places of the kinds described, everywhere in the state, in advance. It merely constitutes an offer on the part of the state of such right, which requires acceptance by use to make it complete. Until such acceptance no right vests under it.

Id. — Estoppel of Municipality — Acts not Creating Estoppel. — Where a railroad company constructs tracks in the streets of a municipality, without any authorizing resolution or ordinance, or under an ordinance known by it to have been illegally passed, and not relying on the belief that it was acting under any ordinance, no estoppel against the city is created by the mere construction of the tracks, and none could arise merely from their subsequent use and operation by the company, no matter how long continued, in the absence of any showing that the company suffered any hardship or detriment on account thereof, or on account of its belief that it had the lawful right to maintain and operate them.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Pennel Cherrington, Wilfred M. Peck, and A. S. Halsted, for Appellant.

Stephen G. Long, and George L. Hoodenpyl, for Respondents.

SHAW, J.—The plaintiff appeals from the judgment and from an order denying its motion for a new trial.

The object of the action was to enjoin the city of Long Beach and its officers from taking up and removing certain railroad sidings and turnouts laid in the streets of the city and used by the plaintiff. The court below, upon the evidence, concluded that the plaintiff had no right to continue

the use of said tracks or to maintain the same in the streets, and thereupon gave judgment for the defendants.

At the time these sidings and turnouts were constructed, and for many years prior thereto, the plaintiff and its predecessors in interest had operated a single track railway along the street in question, extending from the bay of San Pedro through Long Beach to the city of Los Angeles. This road was laid along the streets of Long Beach under grants from that city of two franchises to do so made on April 4 and April 18, 1891, respectively, to the plaintiff's predecessor. The grants are substantially alike in all respects. Some time prior to September, 1902, the plaintiff acquired the said franchises and the said railroad and ever since that time has been operating the same. There are four separate sidings and turnouts involved in the action, to wit: 1. A sidetrack on Alamitos Avenue extending from First to Second Street; 2. Two turnouts on Alamitos Avenue for spur tracks to the freight depot, one near First Street, the other near Fourth Street; 3. A turnout near Third Street extending to the grounds of the Ornamental Brick and Stone Company; 4. A siding extending from Seventh to Tenth Street. The court below found that all of these sidings and turnouts were constructed and maintained without any authority from the said city. We are satisfied that its conclusion was correct.

1. The tracks embraced in the first and second descriptions aforesaid were built upon the supposed authority of certain proceedings of the board of trustees of said city in September, 1902. Long Beach was at that time a city of the sixth class, having five trustees. On September 2, 1902, a resolution was introduced at a meeting of the board purporting to grant to the plaintiff authority to construct these sidings and turnouts. Only four trustees were present. The resolution was put to vote at the same meeting and adopted by a vote of three to one. The authority of the board to grant such franchises is found in sections 465 and 470 of the Civil Code and in section 861 of the Municipal Corporation Act, [Gen. Laws 1910, Act 2348], relating to cities of the sixth class.. Subdivision 4 of section 465 purports to grant to every railroad corporation the power to lay out, construct, and maintain its road with one or more tracks and with such appendages and adjuncts as may be necessary for the convenient use of the same. This provision relates to the general power

of the road to lay and maintain its road anywhere in the state "in such places as it may lawfully acquire and occupy for the purpose." It does not grant or confer rights of way for that purpose. (*Los Angeles* v. *Southern Pacific Co.*, 157 Cal. 369, [108 Pac. 65].) Subdivision 5 of this section authorizes such railroads to construct their roads along any street within the state. This section, however, is qualified and limited by the provisions of section 470, which reads as follows: "No railroad corporation must use any street, alley, or highway, or any of the land or water, within any incorporated city or town, unless the right to so use the same is granted by a two-third vote of the town or city authority from which the right must emanate." Under this section the right to use any street within an incorporated city cannot exist unless it is granted by the proper city authority by a two-thirds vote. Section 861 of the Municipal Corporation Act prescribes the method of granting such franchises as follows: "No ordinance, and no resolution granting any franchise for any purpose, shall be passed by the board of trustees on the day of its introduction, nor within five days thereafter nor at any other than a regular meeting. No resolution or order for the payment of money shall be passed at any other time than at a regular meeting. And no such ordinance, resolution, or order shall have any validity or effect unless passed by the votes of at least three trustees." This section must, of course, be construed in connection with section 470 of the Civil Code. Its language, so far as it permits such ordinances to be passed by three trustees, is, therefore, qualified, so far as franchises for ordinary railroads are concerned, by the terms of section 470 which requires a two-thirds majority of the trustees.

It will be seen from these provisions that the purported franchise, under which these tracks were laid, is void. Under section 861, it could not have been lawfully passed on the day of its introduction or within five days thereafter. The action taken upon it immediately upon its introduction was without authority of law, and, therefore, under the familiar rule that the powers of cities are those only which are given by the charter, in this case the provisions of the Municipal Corporation Act (*Zottman* v. *San Francisco*, 20 Cal. 96, [81 Am. Dec. 96]; *Von Schmidt* v. *Widber*, 105 Cal. 157, [38 Pac. 682]; *Hyatt* v. *Williams*, 148 Cal. 585, [84 Pac.

41]), the attempted passage of the ordinance was void by virtue of the requirements of said section 861. It is, therefore, unnecessary to decide whether or not, under section 470, in order to make a two-thirds majority of the board, four votes would be required.

Appellant's contention that this resolution was taken up at a subsequent meeting and adopted by the unanimous vote of the board cannot be sustained. The court found to the contrary, and the evidence sustains the finding. The matter taken up at the subsequent meeting was an entirely different resolution, which by a clerical error was given the same number as that relating to this turnout. In fact, it did not relate to the same matter, and the resolution in question was never adopted except on its first introduction.

2. The right to maintain the third and fourth tracks above described is claimed under proceedings of the board of trustees on August 15, 1904. With respect to the third track it appears that the president of the Ornamental Brick and Stone Company on that day applied for permission to construct the turnout in question. Thereupon, on motion of the board, the "matter was referred to the board as committee of the whole with power to act." Nothing further was ever done by the council with respect to this application. From what has been said with respect to the first and second tracks in question, it is plain that the railroad company by this action obtained no right whatever to lay or to maintain this turnout.

It appears from the evidence that after this action of the board, referring the matter to the board as a committee of the whole, the members of the board went upon the ground with the plaintiff's engineer, and that at that place, and afterward at the city hall, but not at any regular meeting, the engineer was informed that he could go ahead and build the turnout for the plaintiff. In pursuance of the permission thus given the turnout was constructed. In view of the statutory provisions above quoted it is clear that this proceeding conferred no authority whatever upon the company to build and maintain the track.

With respect to the track No. 4 above mentioned, it appears that on August 1, 1904, the plaintiff asked of the board permission to construct the same, and the application was referred to the committee on public works. This committee, on

August 15th, made its report to the board approving the application and recommending that it be granted. No further action was taken, and it does not appear that any franchise was granted or that council voted upon the report. Upon the principles we have already stated, we must hold that this proceeding gave no authority for the construction and maintenance of this track.

3. It appears that the city of Long Beach was first incorporated as a city of the sixth class in 1888. On August 26, 1897, by proceedings under the Municipal Corporation Act, it was disincorporated. It remained an unincorporated community until December 14, 1897, when it was again regularly incorporated as a city of the sixth class. At that time section 465 of the Civil Code gave to every railroad corporation the power to lay out its road and to construct and maintain the same "with a single or double track, and with such appendages and adjuncts as may be necessary for the convenient use of the same," and to construct such road along any street (subds. 4 and 5). The appellant claims that by virtue of these subdivisions it acquired during this interval of disincorporation a franchise, not only to construct and maintain the single track already in operation, but at any time thereafter, and, under any circumstance, to add such turnouts and sidings as should be found necessary for its convenient use, that this was a vested right of which it could not be deprived by the subsequent incorporation of the city. We cannot see any force whatever in this contention. Subdivision 4 merely gives the railroad power to construct and maintain a railroad. (*Los Angeles v. Southern Pacific Co.*, 157 Cal. 369, [108 Pac. 65.]) It does not purport to grant franchises. Subdivision 5 authorizes the construction of railroads along any street, but it does not authorize turnouts or sidings in a street or elsewhere. It must be construed in connection with section 470, which denies the right to use the street in a city except when granted by the board of trustees. The statute does not give to every railroad company in the state a vested interest of this character in every street, and in all other places of the kinds described, everywhere in the state, in advance. It merely constitutes an offer on the part of the state of such right, an offer which requires acceptance by use to make it complete. Until such acceptance, no right vests under it.

(*Stockton Gas etc. Co.* v. *San Joaquin Co.,* 148 Cal. 318, [7 Ann. Cas. 511, 5 L. R. A. (N. S.) 174, 83 Pac. 54].)   During this interval the company made no turnouts or sidings in this street, and hence the standing offer remained in abeyance, and no right to lay or maintain them was acquired. The grant by the city in 1891 included only the right to a single track in said street. Appellant's predecessor accepted this franchise, and it must be deemed to have thereby consented that its right in the street should be limited to a single track. The subsequent disincorporation of the city cannot in any respect extend or broaden this franchise or add to it the right to maintain sidings and turnouts. When the city was again incorporated, no additional tracks had been constructed, and the provisions of section 470 again controlled the situation and denied to the railroad company the power further to use the streets except by grant from the board of trustees.

4. The appellant claims an estoppel against the city, and in support thereof makes in its brief a number of statements of fact tending to show that, in reliance upon the supposed validity of the permits and resolutions under which the tracks and turnouts in question were constructed, the appellant has expended large sums of money in the construction of tracks, depot buildings, and in the purchase of land, and that the city authorities for eight years, with full knowledge of the facts, acquiesced in the use of the streets by the appellant and made no objections thereto.

The officers and agents of the plaintiff, when they laid the tracks and expended the money, as claimed, knew that the vote upon the resolution of September 2, 1902, was taken on the day it was introduced, and not afterward, that only three members of the board of trustees voted for it, and that only four members were present. As to the other siding and turnout, they knew that there never was any resolution or ordinance passed purporting to allow the construction thereof. There was no direct evidence that they ever believed that any of the franchises or permits was lawfully given, or that they relied on such belief, or on the validity of the permits or franchises in constructing the tracks. The court below may have believed from the evidence that the tracks were not laid, the land purchased, or the money expended, in reliance upon the supposed legality of the franchises claimed therefor, but

that what the plaintiff's officers and agents really relied on was the favor, indulgence, neglect, or apathy of the city officials and the community. It was at liberty to draw against the plaintiff every reasonable inference arising from the evidence or from the want of evidence. In support of its decision we must presume that it did make these inferences and concluded that no estoppel existed. If it did so its conclusion was correct. (*Gardella* v. *Amador County,* 164 Cal. 555, 564, [129 Pac. 993].)

If no estoppel against the city arose from the facts concerning the construction of these tracks, it is certain that none could arise merely from their subsequent use and operation by the plaintiff, no matter how long continued, in the absence of any showing that plaintiff suffered any hardship or detriment on account thereof, or on account of its belief that it had the lawful right to maintain and operate them.

The judgment and order are affirmed.

Sloss, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.