[S. F. No. 5667.    In Bank.—August 19, 1912.]

## CITY OF SANTA CRUZ, Respondent, v. SOUTHERN PACIFIC RAILROAD COMPANY et al., Appellants.

TOWN OF SANTA CRUZ—ACT OF CONGRESS OF JULY 23, 1866—GRANT BY UNITED STATES OF LAND WITHIN CORPORATE LIMITS.—The Act of Congress of July 23, 1866, providing "that all the right and title of the United States to the land within the corporate limits of the town of Santa Cruz in the state of California, as defined in the act of the legislature of that state incorporating said town, be and the same are hereby relinquished and granted to the corporate authorities of said town and their successors, in trust for and with authority to convey so much of said lands as are in the *bona fide* occupancy of parties upon the passage of this act by themselves or tenants, to such parties," operates to grant all the land within the corporate limits of such town then belonging to the United States, whether the same was occupied or unoccupied, but charged the corporate authorities with the duty and trust to convey to every *bona fide* occupant the land he occupied.

ID.—GRANT TO "CORPORATE AUTHORITIES"—TITLE PASSED TO MUNICIPALITY.—Although the act granted title to the "corporate authorities" of the town, and not to the town itself, that expression was used to describe the corporate entity, and not the individuals who then held office as such authorities, and title thereunder vested in the town as an incorporated body.

ID.—TIDE LANDS ON NAVIGABLE BAY—TITLE IN STATE FOR USES OF NAVIGATION AND FISHERY—GRANTEE TAKES SUBJECT TO SUCH USES.—Tide land situated on a navigable bay is held by the state in trust for the benefit of the people. The right of the state is subject to the public rights of navigation and fishery, and, theoretically, at least, the state can make no disposition of them prejudicial to the right of the public to use them for the purpose of navigation and fishery, and whatever disposition she does make of them, the grantee takes them upon the same terms upon which she holds them, and of course, subject to such public rights of navigation and fishery.

ID.—PREPARING TIDE LAND FOR USES OF NAVIGATION—CONSTRUCTING SEAWALL—FILLING IN LAND—USE FOR NAVIGATION DIVESTED—DISPOSITION FOR PRIVATE USE.—When in preparing such tide land for the purpose of navigation, the state finds it necessary to make a seawall and fill in the land between it and the open water and thereby or in some other way for the same purposes, excludes some part of such land from use for purposes of navigation, the public use for navigation, as to that part, becomes divested or abandoned, and it becomes proprietary land, which the state can dispose of to private use.

ID.—CONSTRUCTION OF GRANT BY STATE—GRANT SUBJECT TO PARAMOUNT RIGHTS OF NAVIGATION AND FISHERY.—The act of March 21, 1872, providing, that "all of the tide lands within the corporate limits of said town, between the line of high and low tide, are hereby dedicated as public grounds, and the title thereto is granted to the town of Santa Cruz in trust for the use of the public, and without power to sell or in any manner to dispose of the same or any part thereof, but nothing herein contained shall in any manner be construed so as to prevent the construction . . . of wharves over, in, and through said lands by authority of the laws of the state of California, or the free use thereof for fishing purposes," was evidently enacted in recognition of the fact that Santa Cruz has always been a summer resort, especially adapted to sea bathing and other sports and diversities of similar character, and its purpose was to dedicate the tide land to such uses, subject to the use for navigation and fishery, and to transfer the title to the town for that purpose as custodian or administrator of that public use. The city's title is, therefore, subject to these paramount rights of navigation and fishery.

ID.—WHARF CONSTRUCTED FOR RAILROAD PURPOSES—GRANT OF FRANCHISE BY MUNICIPALITY—DUE ENACTMENT OF ORDINANCE ADMITTED. In an action involving the right of a railroad company to operate a wharf constructed by it for railroad purposes over tide lands situated within the corporate limits of the town of Santa Cruz, under an ordinance of that town, enacted on January 9, 1875, purporting to grant a franchise therefor for fifty years, an admission on the trial that the ordinance was duly and regularly adopted, implies that all the necessary jurisdictional steps had been taken before its passage and that it received the two-thirds vote of the town council, required for a railroad franchise by section 470 of the Civil Code.

ID.—FAILURE OF ORDINANCE TO DESCRIBE QUANTITY OF LAND TO BE USED FOR WHARF—STATUTORY PROVISION DIRECTORY.—The requirement of section 2911 of the Political Code, that a grant of tide land for wharf purposes shall particularly describe the quantity of land over which the right of way is given, is directory only, at least to the extent that upon a collateral attack a failure to observe the requirement will not, of itself, be sufficient to make the grant wholly void.

ID.—ORDINANCE GRANTING WHARF FRANCHISE, TO RAILROAD—CONSTRUCTION IN FAVOR OF GRANTEE—NATURE OF WHARF TO BE BUILT—AID TO COMMERCE CARRIED ON RAILROAD—WHARF CONSTRUCTED BY AUTHORITY OF LAWS OF CALIFORNIA—EXCEPTION IN GRANT TO TOWN. An ordinance of the town of Santa Cruz, granting a railroad company a franchise to construct and maintain a railroad along a named street "to and upon the wharf of said grantee to be constructed at or near the foot of" said street, in view of the fact that the grant was in furtherance of the paramount public use of navigation for which the state holds tide lands in trust, and had been accepted and a wharf erected thereon by the grantee, and maintained and

used for many years without objection, should be liberally construed in favor of the grantee, in so far as it purports to grant such right; and as such town had power and authority over its waterfront and bay, the grant would imply and carry with it the authority to the grantee to build the wharf at the foot of the street, and to connect it therewith, and to extend it into the water for such distance as should be necessary to connect it with deep water and make it convenient for the commerce to be carried on over the railroad, and to maintain and use it, when built, so long as the franchise continued. Such wharf is ·built "by authority of the laws of the state of California" within the meaning of the exception in the grant of tide lands to Santa Cruz under the act of March 21, 1872.

Id.—Constructing Railroad Over Public Bay or Roadstead—Grant from City or Town When Necessary.—Sections 465 and 475 of the Civil Code, in effect, give the privilege of constructing and operating a railroad over any public bay or roadstead in the state, not within a city or town, to any railroad corporation that accepts the privilege and uses it. As to the waters of such bay or roadstead which are within a city or town, a grant from the council is necessary.

Id.—Franchise for Mere Wharf—Duration of Right—Wharf Larger Than Necessary for Railroad—State Succeeds to Right of Possession of Excess.—The grant of the right to construct and maintain such wharf would endure as a purely wharf franchise, under section 2911 of the Political Code, only twenty years from the date of the grant; and if, upon the expiration of such franchise, the wharf is larger than is necessary for railroad purposes, the state, and not the city of Santa Cruz, would succeed to the right of possession of the excess, and alone could maintain an action to recover possession.

Id.—Grant of Wharf Franchises—Local Bodies Act as State Agencies—Title to Tide Lands Remains in State—Termination of Franchise—Wharf Part of Realty and Becomes Property of State.—The sections of the Political Code giving power to boards of supervisors and cities and towns to authorize the construction of wharves bordering on navigable waters for purposes of navigation, do not transfer to the county, city or town, or to the governing authorities thereof, any right or title to the tide lands, or to the wharves erected under the authority given by those bodies. Such subordinate political bodies are merely constituted agents of the state and empowered as such to grant the franchises mentioned on behalf of and for the state. The title to the tide lands for that purpose remains in the state, and when the right granted by the local authority has terminated, the wharf, being suitable for the paramount public use of navigation, and also a structure of a permanent nature affixed to the realty, is a part thereof, and becomes the property of the state.

ID.—OPERATION OF WHARF AFTER TERMINATION OF FRANCHISE—ACQUI-
ESCENCE BY STATE—TENANTS AT SUFFERANCE—CITY CANNOT QUES-
TION TITLE OF PARTY IN POSSESSION.—Upon the termination of a
wharf franchise granted by the town of Santa Cruz, the wharf
erected in pursuance thereof over tide lands within the limits of the
town, become the property of the state, and the state has the right
to maintain it or to permit it to remain for the public use of naviga-
tion. If thereafter it is operated by the grantees of the franchise
for the benefit of the public and with the acquiescence of the state,
for the purposes of navigation, such grantees are, at least, tenants
by sufferance under the state, a title which third persons, including
the city of Santa Cruz, having no interest or privity with the state
with respect to such use, cannot question.

ID.—OBSTRUCTION TO BEACH NOT IN AID OF NAVIGATION—RIGHT OF CITY
TO REMOVE OR PREVENT—OBSTRUCTION IN AID OF PARAMOUNT RIGHT
OF NAVIGATION.—The city of Santa Cruz, as custodian of the sub-
ordinate use relating to its tide lands under the act of March 21,
1872, would have the right to remove, or cause the removal, or pre-
vent the erection of, any obstruction placed upon the beach by the
grantee of the wharf franchise that was not appropriate for wharf
purposes and was not useful in aid of navigation, on the ground that
it was an unnecessary purpresture upon that particular public
use, but it cannot complain of an obstruction that is necessary to
the use or preservation of the wharf for the paramount purpose of
navigation.

ID.—RIGHT TO MAINTAIN SPUR TRACK ON WHARF.—The right to maintain
and operate such wharf includes the right to construct and maintain
thereon, as a reasonable convenience for its operation, a spur track
connecting the main track thereon with the line of another road.

ID.—ENCROACHMENT OF WHARF ON CITY STREET—RENDERING WHARF
ACCESSIBLE FROM STREET—AUTHORITY OF CITY.—Under its general
power to improve its streets, the town of Santa Cruz had authority
to have a small part of the street, along which the railroad had been
granted its franchise, and at the foot of which the wharf was con-
structed, to be so improved by making it a part of the wharf as to
give access thereto for footmen and vehicles, if the use of the street
for ordinary purposes was not impaired thereby.

ID.—PROPRIETARY LANDS OF CITY—TITLE BY PRESCRIPTION MAY BE
ACQUIRED—POSSESSION HELD UNDER ORDINANCE GRANTING FRAN-
CHISE—CLAIM OF RIGHT.—Proprietary land belonging to the city
of Santa Cruz not dedicated to public use, situated between such
street and the tide land, is subject to the ordinary rules concerning
title by prescription, and the possession thereof by the grantee of
the wharf franchise, under claim of right by virtue of the grant
contained in such ordinance, for over thirty years, is sufficient to
establish a prescriptive title thereto, for the term of the grant,
even if such ordinance were invalid.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order refusing a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Cassin & Lucas, for Appellants.

Hugh R. Osburn, J. Leslie Johnston, City Attorney, and Goodfellow, Eells & Orrick, for Respondent.

SHAW, J.—This is an appeal by the Southern Pacific Railroad Company and the Southern Pacific Company, defendants herein, from the judgment for plaintiff and from an order refusing a new trial.

The complaint on its face states a cause of action to quiet title to a tract of land in the city of Santa Cruz, forty feet wide and three hundred and ninety feet long, comprising all of the wharf, known as the railroad wharf, at Santa Cruz, except the part which extends into Monterey Bay beyond the line of ordinary low tide. About one-half of the tract in length, is known as upland and lies above ordinary high tide. The remainder, the southern part, is tide land, lying between the lines of the ordinary high and low tides.

1. The town of Santa Cruz was incorporated by an act of the legislature approved March 31, 1866 (Stats. 1865-6, p. 547). It has since been changed by appropriate legislation to the present city of Santa Cruz. The plaintiff claims title to the upland solely by virtue of the Act of Congress of July 23, 1866, which reads as follows: "That all the right and title of the United States to the land within the corporate limits of the town of Santa Cruz in the state of California, as defined in the act of the legislature of that state incorporating said town be and the same are hereby relinquished and granted to the corporate authorities of said town and their successors, in trust for and with authority to convey so much of said lands as are in the *bona fide* occupancy of parties upon the passage of this act by themselves or tenants, to such parties. Provided that this grant shall not extend to any reservation of the United States, nor prejudice any valid adverse right or claim, if such exist, to said land or any part thereof, nor pre-

clude a judicial examination and adjustment thereof." (14 U. S. Stats. 209.)

The appellants contend that this act should be construed to grant title only to lands that were at that time in the *bona fide* occupation of some person or persons, and that, as there is no evidence of such occupancy of the land in question here, no title thereto is shown. We do not think it can be so construed. In plain language it grants all the right and title of the United States to "the land within the corporate limits" of Santa Cruz. This describes all of the land within those limits which then belonged to the United States. The subsequent clause no doubt made the corporate authorities of the town trustees of all of such land then in the *bona fide* occupancy of any person, with power to convey the same to such person, but it does not purport to qualify the description of the area or to confine the operation of the grant to the occupied lands alone. The effect is that it granted all the right and title of the United States to all lands within the town limits, whether occupied or not, but charged the corporate authorities with the duty and trust to convey to every *bona fide* occupant the land he occupied.

It is next argued that the act granted title to "the corporate authorities" of the town, and not to the town itself, and, hence, that the city, as successor of the town, has no title thereunder, and that the title rests, either in the former corporate authorities of the town, or in the present corporate authorities of the city. We cannot agree to this proposition. The evident purpose of the act was to grant the title to the incorporated body and the term "corporate authorities of said town," was used to describe that entity and not the individuals who then held office as such authorities. This was, in substance, held with respect to an act to grant lands to the "corporate authorities" of Petaluma, upon a like trust. (*Jones* v. *Petaluma,* 36 Cal. 238. See, also, *Davoust* v. *Alameda,* 149 Cal. 74, [9 Ann. Cas. 847, 5 L. R. A. (N. S.) 536, 84 Pac. 760] ; *Arnold* v. *San Jose,* 81 Cal. 618, [22 Pac. 877].)

2. The city claims title to the tide land by virtue of section 2 of the act of March 21, 1872. (Stats. 1871-2, p. 472.) It is as follows: "All of the tide lands within the corporate limits of said town, between the line of high and low tide, are hereby dedicated as public grounds, and the title thereto is granted

to the town of Santa Cruz in trust for the use of the public, and without power to sell or in any manner to dispose of the same or any part thereof, but nothing herein contained shall in any manner be construed so as to prevent the construction and maintenance of wharves over, in, and through said lands by authority of the laws of the state of California, or the free use thereof for fishing purposes.''

Tide land situated on a navigable bay, as this land is, ''is held in trust for the benefit of the people. The right of the state is subject to the public rights of navigation and fishery, and, theoretically, at least, the state can make no disposition of them prejudicial to the right of the public to use them for the purpose of navigation and fishery, and whatever disposition she does make of them, the grantee takes them upon the same terms upon which she holds them, and of course subject to the public rights above mentioned.'' (*Ward* v. *Mulford,* 32 Cal. 372; *Oakland* v. *Oakland W. F. Co.,* 118 Cal. 182, [50 Pac. 277] ; *People* v. *Kerber,* 152 Cal. 733, [125 Am. St. Rep. 93, 93 Pac. 878].) This broad statement is somewhat qualified, as shown in the opinions in the cases cited, the qualification being that when in preparing such tide land for the purpose of navigation, the state finds it necessary to make a seawall and fill in the land between it and the open water and thereby or in some other way for the same purposes, excludes some part of such land from use for purposes of navigation, the public use for navigation as to that part, becomes divested or abandoned, and it becomes proprietary land, which the state can dispose of to private use. This qualification, however, is of no importance here, for no such exclusion or abandonment has taken place with respect to these lands. The above statute was enacted in 1872, and hence it is not affected by the limitation prohibiting the grant or sale of such land within two miles of a city or town, found in article XV, section 3, of the present constitution. But in view of the public trust upon which the state itself holds these lands, a statute is not to be construed to devote such land to any other use, unless it clearly purports to do so. It is not necessary to determine, for the present, whether or not it could, under. any circumstances, do this, for we do not think the act so intends. Santa Cruz has always been known as a summer resort, especially adapted to sea bathing and other sports and di-

versions of similar character.  The act was evidently passed in recognition of this fact, and the intention was to dedicate the tide land to that use, subject, however, to the use for navigation and fishery, and to transfer the title to the town for that purpose as custodian or administrator of that public use. The purpose was simply to give Santa Cruz control of the beach when it was not in use for navigation or fishery.  There was no intention to abandon or impair these primary and paramount public rights and uses, rights which, as above stated, are to a large extent paramount to the title of the state itself.  That this was not intended is shown by the reservation of the right to construct and maintain wharves over the land and the free right of fishery.  The city's title is therefore subject to these paramount rights.

The codes were enacted in 1872 by the same legislature that passed the above special grant to Santa Cruz.  They took effect as of the first day of the session.  (Pol. Code, sec. 4478.) The authority to build wharves and railroads over tide lands is found in the Political Code and in the Civil Code.  Section 465 of the Civil Code, gives power to any railroad corporation to construct its road across, along or upon any roadstead, bay, street or highway.  Section 470, provides that no railroad corporation must use any street, alley, or highway, or any of the land or water within any incorporated city or town, unless the right to such use is granted by a two-thirds vote of the city or town council.  Sections 2906 to 2920 of the Political Code, provide for the granting of authority to construct, maintain, and operate wharves and take tolls for the use thereof, on any lands bordering on navigable waters.  On lands in cities and towns, such right is to be granted by the municipal authorities; on lands outside of such cities and towns, by the county board of supervisors.  (Secs. 2906, 2920.)  In either case, the license is limited to twenty years.  (Secs. 2906, 2911.) Such grant gives the right of way over all tide lands of the state necessary for the particular wharf.  (Sec. 2911.)

The wharf of the defendants was built in 1876 by the Santa Cruz and Felton Railroad Company.  It was built in connection with its railroad and under a franchise granted to it by the town of Santa Cruz in 1875.  The railroad company was incorporated in 1874 for the purpose of building and operat-

CLXIII Cal.—35

ing a railroad from the town of Felton to the tide line of
Monterey Bay in Santa Cruz and of operating and maintain-
ing such wharves as should be necessary to the convenient
operation of the railroad from Felton to said tide line.    The
corporate limits of Santa Cruz extended three miles into
Monterey Bay.    On January 9, 1875, the town of Santa Cruz,
by ordinance, granted to that company a franchise, purport-
ing to extend fifty years from that date, to construct and main-
tain a railroad along Pacific Avenue, "to and upon the wharf
of said grantee to be constructed at or near the foot of Pacific
Avenue."    Under this franchise that company, in 1876, built
the railroad and wharf in question, placing its railroad track
upon the wharf and extending it thereon to the end of the
wharf at deep water in the bay.    That company operated the
said railroad and wharf thereafter until 1887, when the appel-
lants succeeded to its rights under the franchise, and they
have ever since continued to maintain and operate the wharf
and a railroad thereon.    Appellants now claim that they are
entitled to operate said wharf for the remainder of the life of
the franchise. .

Respondent asserts that, as a wharf franchise, this grant is
void because it does not appear that any notice of the ap-
plication therefor was given, or that any hearing was had
thereon, as required by sections 2907 and 2910 of the Political
Code.    On the trial the plaintiff admitted that the ordinance
granting the franchise was duly and regularly adopted.    This
necessarily implies that all the necessary jurisdictional steps
had been taken before its passage and that it received the two-
thirds vote required for a railroad franchise by section 470 of
the Civil Code.    Objection is also made that it is invalid be-
cause it does not particularly describe the quantity of the
tide land over which the right of way was given for wharf
purposes, as required by section 2911, aforesaid.    It may be
that the state could prosecute an inquiry on that question and
could possibly avoid the grant on that ground.    But section
2914 provides that a wharf may be seventy-five feet wide and
may extend to navigable water.    It is not contended that this
wharf is wider than the statute allows.    We are of the opin-
ion that the requirement of section 2911 relating to wharves,
that the grant shall specify the quantity of tide land that may
be used, is directory, only, at least to this extent, that upon a

collateral attack such as is here made, a failure to observe this requirement will not, of itself, be sufficient to make the grant wholly void.

It is obvious from the conduct of all the parties concerned that they all understood that the effect of the railroad franchise was to give or grant the right to build and maintain this wharf. It was accepted by the grantee, the wharf was built, evidently at great expense, and it has been ever since maintained and operated, without objection by the town or city authorities, so far as appears, until this action was begun. The amended complaint was filed January 26, 1909. The date of beginning the action does not appear in the record, but it was not long before. The inciting cause of the suit seems to have been the announced intention of the appellants to fill in the space under the wharf with rocks and masonry in such a manner as to prevent free passage under it. Under these circumstances, and in view of the fact that the grant was in furtherance of the paramount public use of navigation for which the state holds such lands in trust, we think it should have a liberal interpretation in favor of the grantee, insofar as it purports to grant such right. The town had the power to lay out, extend, alter, and improve public streets. A public way or approach to a public wharf is a highway, in the general sense of that term. The power to improve a street would include power to improve that part of a public street leading to a public wharf so as to give access to the wharf from the street and facilitate passage to and from the wharf by the public. The railway is as much a part of the wharf, when constructed, as the planks of the ordinary roadway thereof. One allows footmen and ordinary vehicles to pass to the ships, the other allows the railroad cars to do so. The granting of the right to build a railroad along a street leading to the ocean front, ''to and upon the wharf'' to be constructed by the grantee at the foot of the street, by which would be understood the water-front, where, as was the case here, the grantor also had power and authority over the water-front and bay, would imply and carry with it the authority to the grantee to build the wharf at the foot of the street and extend it into the water for such distance as should be necessary to connect it with deep water and make it convenient for the commerce to be carried on over the railroad. The parties could

have contemplated nothing less than this. Anything less would have made the whole structure useless. We think, therefore, that so far as plaintiff is concerned, this grant must be held to give the right to make the connection between the street, as it then existed, and the proposed wharf, and to construct the wharf over the intervening tide land to deep water and to maintain and use the wharf, when built, so long as the franchise continued.

Sections 465 and 475 of the Civil Code, in effect, give the privilege of constructing and operating a railroad over any public bay or roadstead in the state, not within a city or town, to any railroad corporation that accepts the privilege and uses it. As to the waters of such bay or roadstead which are within a city or town, a grant from the council is necessary. The council of Santa Cruz having made the grant for fifty years, and the appellants having built the railroad over the bay to deep water, and being now in the use of it, there can be little doubt that with regard to the railroad and so much of the wharf structure as may be necessary or convenient for its maintenance and operation, the fifty-year grant is still in force and the right of possession by the appellants under it still continues. It is a wharf built "by authority of the laws of the state of California," within the meaning of the exception in the grant of 1872 to Santa Cruz.

The grant being made in 1875, it would endure as a purely wharf franchise, under section 2911 aforesaid, only twenty years from that date. Conceding that the wharf is larger than is necessary for railroad purposes, although it is not alleged or shown, and that the excess could be obtained and held only as a wharf franchise under the Political Code, we are of the opinion that upon the expiration of that franchise it would be the state, and not the city, that would succeed to the right of possession of such excess. The sections of the Political Code referred to, giving power to boards of supervisors and cities and towns to authorize the construction of wharves over lands bordering on navigable waters for purposes of navigation, do not purport to transfer to the county, city or town, or to the governing authorities thereof, any right or title to the tide lands, or to the wharves erected under the authority given by those bodies. The code merely constitutes these subordinate political bodies the agents of the state and

empowers them, as such, to grant the franchises mentioned, on behalf of and for the state. It merely provides a means or agency whereby the right is transferred from the state to the party who builds the wharf. The title to the tide lands for that purpose, therefore, remains in the state. From this it necessarily follows that when, by efflux of time, the right thus granted by the local authority has terminated, the wharf, being suitable for the paramount public use of navigation, and also a structure of a permanent nature affixed to the realty by the grantee during the term of the license or tenancy, is a part of the realty and becomes the property of the state. (Civ. Code, sec. 477.) We think it is clear that, aside from the effect of the special act aforesaid, at the expiration of this license the city of Santa Cruz did not succeed to the wharf right or franchise, or to the possession and use of the wharf for the purposes of navigation. It was erected under the authority of the state. Hence, it was within the reservation in the special act and it is the property of the state, and the state alone has the right of possession and use and the right to maintain an action to recover possession.

It remains to consider, in this connection, whether the special act of March 21, 1872, gives the city of Santa Cruz the right to interfere with the wharf, or cause it to be abated as a nuisance or removed as a purpresture, or a right to enjoin the filling in of the space under it with rocks or other material which would obstruct the convenient use of the tide land as pleasure grounds. The complaint asks for such injunction and that the city's title be quieted, but does not ask to recover possession. The judgment does not grant the injunction, nor quiet the title, but it declares that the plaintiff shall recover possession of the land.

There can be no question but that the state, notwithstanding the grant to Santa Cruz, still retains and holds the right to erect a wharf extending over this tide land, and to operate the same if it sees fit to do so, for the benefit of the public. Such wharf would be in furtherance of the paramount trust upon which the state holds such land. If the state did this, the city of Santa Cruz would have no right, under its grant, to interfere in the matter. The wharf in question, assuming that the interest of the appellants therein has ceased, now belongs to the state as fully as if the state itself had built it.

The state has the right to maintain it or to permit it to remain for that public use. It is being operated by the appellants for the benefit of the public and with the acquiescence of the state, for the purposes of navigation. The appellants are, at least, tenants by sufferance, under the state, a title which third persons, having no interest or privity with the real owner with respect to this use, cannot question. The city has no right of possession, at least so long as it is used for the paramount purpose. The city has no interest in that use and it cannot prevail against one who is in possession for the purpose of administering the use and is doing so. It is obvious that the judgment in favor of the city for the possession of the part of the wharf situated between the line of high and low tide, is erroneous.

The principal thing complained of is the threatened act of the appellants in filling in the space under the wharf so as to prevent the use of that part of the beach for pleasure grounds. It may be conceded that if the appellants should place any obstruction upon the beach that was not appropriate for wharf purposes and was not useful in aid of navigation, the city, having charge of the subordinate trust relating to that land, would have the right to remove it or cause its removal, or to prevent its erection, on the ground that it was an unnecessary purpresture upon that particular public use. This is the extent of the right and power of the city. It is not claimed or asserted that the filling in of this space is unnecessary to the use or preservation of the wharf, or that it obstructs or prevents the use of the beach for other purposes more than is necessary for the purposes of navigation. It appears to be an appropriate method of strengthening the structure. Hence it follows that the city has shown no right to interfere with such improvement of the wharf.

3. In February, 1875, another franchise was granted by the town of Santa Cruz to a company known as the Santa Cruz Railroad Company, to build a railroad into Santa Cruz over a route described therein, ''with such switches and turnouts as may be deemed necessary by the grantee for the convenient use and operation of said railroad.'' Under this franchise that company built a railroad from Watsonville to Santa Cruz over the designated route, crossing Pacific Avenue at a point a few feet northerly of the northerly or inner end of the wharf.

From this road a turnout or curved spur track was made to connect that road with the Santa Cruz and Felton Railroad upon the wharf aforesaid. This spur track enters upon the wharf near the northerly end and there connects with the track of said Felton Railroad, thus affording access to the wharf from the Watsonville Railroad. This connecting spur was made within three years next before the action was begun. The track of the Felton Railroad, except the portion thereof on the wharf extending from its connection with this spur track to the outer end of the wharf in the bay, has been removed, and the use of that part of that road was abandoned before this action was begun. The date of such removal and abandonment does not appear, but ever since that time the only access by rail to the wharf has been from the present Southern Pacific main track, being a part of the said Watsonville Railroad, over the spur aforesaid. So far as the part of this spur track which is laid upon the wharf is concerned, the right to maintain it is covered by and included in the right to maintain and operate the wharf. This necessarily follows from the fact that such a spur track would be a reasonable convenience for the operation of such a wharf. With respect to that portion of the spur track situated outside of the wharf, and consequently outside of the lands involved in this action, we need not concern ourselves. It is not a question in issue.

The portion of the land occupied by the wharf and situated above the line of high tide appears to be necessary for the wharf. The appellants have the same right to occupy it as a part of the wharf as they had to occupy the part between the high and low tide lines. The railroad franchise has not expired and under that they have the right to use and operate the railroad tracks upon the wharf. The power given to the town to improve streets would include power to authorize such improvement. Under this general power the town has authority to have the small triangular part of Pacific Avenue lying within the wharf lines so improved by making it a part of the wharf as to give access for footmen and vehicles to the wharf. It does not appear that this part of the wharf impairs the use of the street for ordinary purposes. It may be further said that the land of the city between the street and tide line is proprietary land not dedicated to public use. It is subject to the ordinary rules concerning title by prescription. The

appellants have been in possession, under claim of right by virtue of the grant contained in the ordinance, for over thirty years. With respect to this part of the land they have title by prescription, for the term of the grant, even if it were conceded that the ordinance is invalid.

For the reasons here given, we are of the opinion that the judgment is erroneous and that the city has established no right of possession, nor any cause for issuing the injunction prayed for.

The judgment and order are reversed.

Henshaw, J., Melvin, J., and Lorigan, J., concurred.

Rehearing denied.

Beatty, C. J., Angellotti J., and Sloss J., dissented from the order denying a rehearing.