ULYSSES G. SCHELLER DE BUOL

*v.*

THE FREEPORT AND MISSISSIPPI RIVER RAILWAY COMPANY.

*Filed at Ottawa November 17, 1884.*

1. EMINENT DOMAIN—*of the petition—its sufficiency, as showing the proposed taking is for a public use.* A petition to condemn a strip of land one hundred and fifty feet wide over defendant's land, alleged that petitioner was a corporation organized and existing under the general railroad laws of the State; that the object of its organization was to construct and operate a railroad, under the laws of the State, from F. to G.; that it was authorized to exercise the right of eminent domain, and that in accordance with the purposes of its organization petitioner had surveyed, staked off and located its railway: *Held,* that from these averments it was apparent the proceeding was to condemn private property for a public purpose, and for no other.

2. SAME—*hearing in term time—jurisdiction.* Where no hearing of a petition for the condemnation of land was applied for or fixed for a day in

vacation, but the cause was commenced for the March term of the county court, and regularly continued to the April term, and process served for that term, it was *held*, that the court had jurisdiction to try the case at the last named term.

3. SAME—*inability to agree as to compensation—how shown.* Where the petition for a condemnation states that the petitioner is unable to agree with the owner as to the compensation to be paid for the right of way, if this need be proved it may be shown by the defendant's own evidence.

4. SAME—*width of right of way—by whom to be determined.* On the trial of a condemnation proceeding for right of way, evidence that it is not necessary to take a strip of land one hundred and fifty feet wide through the defendant's land, is not admissible. That is not a question for the jury to pass upon. The only question for the jury is the amount of damages to be assessed.

5. SAME—*measure of damages—as to profits arising from use of land taken.* Where the proposed right of way would take the defendant's wine cellar, the court refused to allow him to testify what damage he would suffer by the taking of his cellar, but he was allowed to testify to the value of his land for any and all purposes: *Held,* no error in refusing the evidence as to the cellar.

6: On such assessment, in ordinary cases, the question to be determined is the market value of the land to be taken, and in order to arrive at that value it is proper to show that the land is valuable for grazing, for raising corn, wheat, oats, grapes, or any other products for which it may be used; but the probable profits arising from a wine cellar, or otherwise, are too remote.

7. So in a proceeding to condemn land used as a farm and a vineyard, it is proper to instruct the jury not to take into consideration the profits of the land owner in his business, in estimating the damages.

8. SAME—*as to improvements made by another company, and abandoned.* Where some grading and excavations have been made on defendant's land by a different railway company, and abandoned, and such improvement is sought to be taken in a proceeding to condemn, it is error to refuse to allow the defendant to testify how many cubic yards of grading and filling are on the land, and the present value of the grading and filling on the line of the proposed road over his land.

9. The value of the land sought to be taken, to the railroad company seeking its condemnation, is not a matter to be considered in estimating the damages to be allowed, as the value of the land to the petitioner, whether great or small, can not affect the true compensation which the owner may be entitled to receive.

10. SAME—*of improvements, as enhancing market value.* If the land to be taken has upon it an improvement which materially adds to its market value, the owner will have the right to show its character and extent, and its

value, for the purpose of enhancing the market value of the property. The market value is not confined to any one particular use, but the value for any purpose for which the land may be adapted may be proved.

11. SAME—*as to "incidental damages," such as cutting off one part of a farm from another—or, inconvenience in reaching a highway.* Where a strip of land through a farm is sought to be condemned, it is error to instruct the jury that "incidental damages" should not be considered by them, as being calculated to confine the jury to the value of the land actually taken. Damages may be allowed where one part of a farm is cut off from the other, and where it is rendered more inconvenient to reach a highway. Such damages may be regarded as incidental.

APPEAL from the County Court of Jo Daviess county; the Hon. WILLIAM R. ROWLEY, Judge, presiding.

Mr. E. L. BEDFORD, for the appellant:

The petition fails to show that appellant's land is required for a public use. *Smith* v. *Railroad Co.* 105 Ill. 511.

When the petition is filed in vacation, it remains a vacation proceeding though made returnable to a term, and the jury should have been selected accordingly. *Haslam* v. *Railroad Co.* 64 Ill. 353; *Hyslop* v. *Finch,* 99 id. 183.

The petition was defective in failing to allege that petitioner was a legally organized corporation, and it also failed to show the parties could not agree upon the damages. These averments are jurisdictional. Rev. Stat. 1874, p. 475, sec. 2; *Railroad Co.* v. *Chamberlain,* 84 Ill. 339; *Bowman* v. *Railway Co.* 102 id. 336; *Booker* v. *Railway Co.* 101 id. 470; *Village of Hyde Park* v. *Borden,* 94 id. 35; Mills on Eminent Domain, sec. 107.

It was error in the court to refuse to allow the defendant to show that a strip of land one hundred and fifty feet wide was not needed. *Railway Co.* v. *Melville,* 66 Ill. 329.

The land owner has the right to be heard on the question of necessity, as well as the damages. *Paul* v. *Detroit,* 32 Mich. 108; *Bowman* v. *Railway Co.* 102 Ill. 336.

The court erred in instructing the jury that they should not consider incidental damages. *Railroad Co.* v. *Hopkins,*

90 Ill. 322; *Railroad Co.* v. *McKinley,* 64 id. 341; *Jones* v. *Railroad Co.* 68 id. 383; *Wilson* v. *Railroad Co.* 59 id. 276; *Railroad Co.* v. *Railroad Co.* 96 id. 277.

Mr. B. C. Cook, for the appellee, submitted that the several objections to the petition were not well taken.

The hearing not having been fixed in vacation, the county court had jurisdiction at its April term.

There was evidence showing the organization of the petitioner as a corporation; but even if there had not been, the objection comes now too late. *Wiggins Ferry Co.* v. *People,* 101 Ill. 446; *Railroad Co.* v. *Reich,* id. 157; *King* v. *Railroad Co.* 98 id. 376.

Mr. Justice Craig delivered the opinion of the Court:

This was a proceeding in the county court of Jo Daviess county, commenced by the Freeport and Mississippi River Railway Company, to condemn a strip of land one hundred and fifty feet wide, in Jo Daviess county, owned by Ulysses G. Scheller De Buol, upon which the company had located its line of road. The appellant, as appears from the record, owned fifty-four acres of land, which he occupied as a residence, a portion of the land as a garden, and a portion as a vineyard. The railroad, as located, runs through this tract of land. The land condemned or proposed to be taken is five and seven-tenths acres, including appellant's garden, house where he resides, stable, out-houses, and shrubbery. The jury, on the hearing, allowed appellant for the land taken and damaged, $1600, and this amount not being satisfactory, he appealed.

The first point presented by appellant is, that the petition does not allege that appellant's land is required for public use. It is alleged in the petition that petitioner is a corporation organized and existing under the general railroad incorporation laws of the State; that the object of the organization

is to construct and operate a railroad, under the laws of this State, from Freeport to Galena; that it is authorized to exercise the right of eminent domain; that in accordance with the purpose of its organization, petitioner has surveyed, staked off and located its railway. From these averments it is plain that the company is proceeding to condemn private property for a public purpose, and for no other purpose.

It is next urged that the county court had no jurisdiction to try the cause at the April term. No hearing was applied for or fixed for a day in vacation, but the cause was commenced for the March term of the county court, and regularly continued to the April term. Process served for that term, and no reason is perceived which would deprive the court of jurisdiction.

The point that no evidence was introduced on the trial to prove that appellee was incorporated, is met by the amended record filed during the term, which shows that the articles of organization were read in evidence.

It is also said that the record fails to show that petitioner and appellant could not agree on the amount of damages to be paid, and that this is a fatal defect in the proceedings. It was alleged in the petition that petitioner was unable to agree with the owner as to the compensation to be paid; and if evidence was required to support an averment of this character, the evidence of defendant himself was ample to prove the averment.

It is also insisted that the court erred in refusing to permit appellant to testify that it was not necessary for petitioner to take a strip of land one hundred and fifty feet wide through his land. That was not a question for the jury to pass upon. The only question for the jury was the amount of damages to be awarded appellant, as ruled in *Smith* v. *Chicago and Western Indiana R. R. Co.* 105 Ill. 511.

It is also claimed that the court erred in refusing to allow appellant to testify what damage he would suffer in conse-

quence of petitioner taking his wine cellar. The appellant was allowed to testify to the value of his land for any and all purposes, and upon this point the evidence was full and unrestricted. In cases of this character the question to be determined is the market value of the land to be taken, and in order to arrive at the market value it is proper to show that the land is valuable for grazing, for raising corn, wheat, oats, grapes, or any other products for which the land may be used; but the probable profits arising from a wine cellar were too remote, and did not, in our judgment, tend to throw any light on the market value of the property.

It appears from the testimony that some years ago the Illinois Central Railroad Company did some grading and excavating on appellant's land, which appellant now owns, and which petitioner now proposes to take by this proceeding. When appellant was on the stand as a witness, he was asked to state how many cubic yards of grading and filling were on his land. He was also asked the following question: "Do you know the present value of the grading and filling on the line of the proposed road over your land? If so, please state the same." Upon objection, the court refused to allow either of the questions to be answered. We do not understand that the value of the land proposed to be taken, to the railroad company, was a matter to be considered in estimating the damages to be allowed. Whether the value of the land to the railroad company may be great or small, can not affect the true compensation which the owner may be entitled to receive; but if the land to be taken has upon it an improvement which materially adds to its market value, we are aware of no rule of law which will deny the owner the right to show the character and extent of the improvement, and its value, for the purpose of enhancing the market value of the property proposed to be condemned. Here, appellant was the absolute owner of the grading which had been made upon his land. The petitioner seeks to condemn it. The

law requires the market value of the land to be paid to the owner. That market value is not confined to any one particular use, but the market value for any purpose for which the land may be adapted may be proven. Now, if the grading materially increased the market value of the land for any purpose whatever, we see no reason which should deny appellant the right to prove that fact.

The second instruction given for petitioner directs the jury that "incidental damages should not be considered by them." If this instruction was calculated to confine the jury to the value of the strip of land actually taken in estimating the damages, as we think it was, it was erroneous. Damages may be allowed where one part of the farm is cut off from the other, where it is more inconvenient to reach a highway after the construction of the road than before, and in other like cases, and such damages may be regarded as incidental.

The seventh instruction in substance declared that the jury should not take into consideration the profits in appellant's business in estimating damages. This is complained of, but it is in harmony with the former decisions of this court, and we do not regard it erroneous.*

This disposes of the substantial errors complained of, and for the two errors indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*

---

* This is the instruction referred to:

"The jury are instructed that in estimating the compensation to the defendant, Scheller, they should not take into consideration the profits, past, present or future, of the business of said defendant as a wine manufacturer, but the jury should disregard all testimony with regard to such profits, as the same, in law, form no part of the compensation to which said defendant is entitled in this case."