[L. A. No. 289. In Bank.—July 21, 1899.]

CITY OF LOS ANGELES, Respondent, v. A. E. POMEROY et al., Appellants.

EASEMENT FOR DITCH—ADVERSE USER—CESSATION OF USE.—An easement for a ditch acquired by adverse user is lost and extinguished by complete disuse for the period prescribed for acquiring title by prescription.

ID.—PATENT TO SUCCESSORS OF MEXICAN GRANTEE—FREEDOM FROM LEGAL EASEMENT—EQUITY.—A United States patent issued without reservation to the successors of a Mexican grantee, to whom the whole rancho was conveyed without reservation, does not inure to any person claiming under a grant of an easement of a ditch from the original grantee; but the patentee acquired the whole legal title free of every sort of legal servitude. The grantee of such easement has at most a mere equity, which must be alleged and proved as such.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

R. H. F. Variel, and J. S. Chapman, for Appellants.

William E. Dunn, for Respondent.

BEATTY, C. J.—This is a suit to enjoin the defendants from interfering with a certain dam and ditch by means of which the plaintiff diverts water from the Los Angeles river for the use of its inhabitants and for domestic purposes. The dam and ditch in question are situated upon a part of the Providencia rancho which belongs to the defendants, and the question is whether the city has the right to maintain them. The cause was tried in the superior court without a jury, the facts found in favor of the plaintiff, and judgment entered accordingly. The defendants appeal from the judgment and from an order denying a new trial.

The following is a general outline of the case presented by the record. The Los Angeles river flows through the city of Los Angeles, which has succeeded to the rights of the former pueblo in respect to the waters of the river. Above the city is the Los Feliz rancho, and above that the Providencia. The Providencia was granted by the Mexican authorities to Vicente de la Osa in 1843. In 1845 De la Osa made a grant, in the form usually employed at that time, to Maria Ignacia Verdugo de Feliz, her heirs and successors, of "the right to open a *zanja* over my said land and to use of the water of the river to irrigate the lands of the potrero known as that of the Feliz, or place of San Jose, for fifty dollars, which he has received to his satisfaction," et cetera. This instrument appears to have been inscribed, according to the Mexican practice, in a book of public records—an authenticated copy being delivered to the grantee—but it was never recorded in the county records of Los Angeles until 1868. In the meantime, in 1849, De la Osa had granted and conveyed the Providencia without reservation to Alexander and Mellus, who in 1852 petitioned for a confirmation of the grant. Upon their petition the grant was confirmed, and in 1872 a patent was issued to them. By various mesne conveyances the defendants have acquired the title of Alexander and Mellus.

The successors of Verdugo Feliz in the ownership of the Feliz rancho and their tenants are shown to have been in possession of an irrigating ditch as early as 1855, through which they diverted water from the river at or very near the point where the dam in controversy here is situated. How long before 1855, if at all, that old ditch had been opened and used there is nothing to show. Nor is there anything, aside from a highly rea-

sonable presumption, to show that it was opened in pursuance of the grant or license from De la Osa, above quoted. It is very satisfactorily proved, however, that from 1855 to 1868 the tenants of the Feliz rancho continually maintained their dam and ditch, and diverted a sufficient quantity of the waters of the river to irrigate so much of the potrero of the Feliz ranch as lay under the ditch. As to the extent of the potrero, the only evidence offered was that of plaintiff, to the effect that it contained in all five hundred acres, of which only three hundred and twenty-four acres were under the ditch, *i. e.,* so situated as to be irrigable from that source. There is no evidence as to the quantity of water required for the irrigation of those three hundred and twenty-four acres.

In 1868, the successors of Verdugo Feliz conveyed the potrero of the Feliz, with its appurtenances, to Howard, but without any special mention of the ditch or any water right or easements in the Providencia. Later in the same year, Howard granted, bargained and sold to the Canal and Reservoir Company, a corporation, its successors and assigns, "the right and privilege to use that certain *zanja* or irrigating ditch or canal, through which water is taken from the river Los Angeles and conveyed in and upon that portion of the Feliz ranch heretofore conveyed . . . . together with all the easements and rights thereto appertaining and the right of way over and through said Feliz ranch . . . . as also the ranch Providencia; . . . . always provided that the said party of the first part, his heirs, executors, or assigns, have and do hereby especially reserve, the right to take and extract all the water from the said *zanja,* or irrigating canal, that is or may be necessary for the irrigation and domestic purposes, benefit, and uses of the said afore-referred to portion of the Feliz ranch, at such time and in such manner and for such places as the said party of the first part, his heirs, executors, et cetera, may deem proper." Under this grant or license the Canal and Reservoir Company took charge and control of the ditch, enlarged and extended it, and conducted water to the city of Los Angeles until 1872, when they executed a lease of the entire canal to the city for a term of thirty months, with an option to the city to purchase within the term the leased property for a stipulated price. Under this

lease the city took charge and control of the entire works, from the dam on the Providencia all the way down, and so remained until 1886. The city did not, however, avail itself of its option to purchase within the term of its lease, which expired in December, 1874, but remained in possession without objection on the part of the Canal and Reservoir Company, and without paying rent—no rent being reserved in the lease, or mentioned in any way, except the nominal sum of one dollar for the entire term of thirty months. In 1877, and from time to time, the city enlarged the capacity of the ditch so that it carried, in 1878, about thirty cubic feet per second—equivalent to about fifteen hundred inches constant flow under four-inch pressure. What the original capacity of the ditch was is quite uncertain. The superior court found, upon evidence that seems to me very shadowy and untrustworthy, that it was fifteen cubic feet per second, and based its decree on that finding. I think eight cubic feet per second, or four hundred inches' constant flow, would be nearer the mark, and that indeed is all that the plaintiff claims in its complaint. In 1878, the Canal and Reservoir Company conveyed to the city all that part of its ditch, et cetera, situated within the corporate limits of the city, but no change in the use or management of the ditch or any part of it took place in consequence of this conveyance. The city continued thereafter, as before, to use the whole line of ditch for the supply of water to its inhabitants without objection on the part of the Canal and Reservoir Company. About this time, however —that is to say, in 1877 or in 1878—the city abandoned the use of that part of the ditch situated on the Providencia ranch, and made a new diversion at a point lower down, where a pile dam was constructed, for the purpose of turning the water into the new ditch. This change in the place of diversion continued until the year 1891, a period of thirteen or fourteen years, during which time that part of the old ditch situated on the Providencia ranch grew up with willows and weeds and fell into a state of general dilapidation. The dam at the head and six or eight hundred feet of the upper end of the ditch were entirely obliterated.

Pending this change in the point of diversion—in the year 1886—the city entered into a contract with the Citizens' Water

Company, a corporation, whereby that company agreed, in consideration of the use of twenty inches of the city's water, to convey through its pipes all the water required by the city for public purposes within the district covered by its system. As the water company, under this contract, drew its supply from the Canal and Reservoir Company's ditch, the city seems to have left to it the task and responsibility of keeping the ditch in order at all times, except when a large quantity of water was required for irrigation. Matters being in this posture in the winter of 1889-90, the water company found it impracticable to obtain a supply of water at the pile dam on account of the damage caused by an extraordinary freshet in the river, and proceeded to open a new ditch connecting with a new dam on the lower end of the Providencia rancho. At that date the title to this portion of the Providencia rancho, derived from De la Osa through Alexander and Mellus, was vested in the Providencia Company, a corporation, the immediate predecessor of the defendants, and the officers of that company promptly contested the right of the water company to open a ditch or divert water on their land. The city authorities were notified of the controversy, but they seem to have given the matter no attention, and the result was that the water company and the Providencia Company agreed upon a *modus vivendi* pending the determination of their respective rights. The substance of their agreement was a permission by the Providencia Company to maintain the ditch and divert the water on its land as long as the water company continued to pay five dollars a day for the privilege—the arrangement being terminable upon sixty days' written notice by either party. In pursuance of this agreement the water company reopened the old ditch originally used by the tenants of the potrero of the Feliz from 1855 to 1868, as above stated, and made a diversion of water by means of a dam located at or very near the site of the original dam—the only material difference being that the ditch was enlarged and a much greater quantity of water diverted.

Pending this arrangement, the defendants purchased the Providencia rancho, and thereafter permitted the diversion of the water under the agreement until August, 1893, when it was terminated by written notice from the water company. Upon the

termination of the agreement and the refusal of the water company or the city to make any further payment thereunder, the defendants turned the water from the ditch back into the natural channel of the river by opening a gate therein just below the dam.

Thereupon this action was commenced, in which the superior court has found that the city has a right to maintain its dam and a ditch with a capacity of fifteen cubic feet per second—equivalent to seven hundred and fifty inches constant flow—on the lands of the defendants, and has enjoined them from obstructing or interfering with the city in the exercise of such rights.

The defendants, in support of their appeal from the order denying their motion for a new trial, contend that the findings of the superior court are contrary to the evidence, and the specific question to be determined is whether the city has proved a title by grant or prescription to the easement which it claims in the Providencia rancho.

The right of the city to so much of the water flowing in the river at any point above the city limits as it may require for public purposes or for the use of its inhabitants is established by the decision in the case of *Los Angeles v. Pomeroy*, 124 Cal. 597, but this right in the waters of the river does not include the right to maintain dams or ditches upon the lands of upper riparian proprietors for the purpose of effecting a diversion of the water, and to maintain this action the city, like any other litigant, must show a good title to the easement which it claims. In this case there seems to have been an attempt on the part of the city to assert a prescriptive title founded upon adverse user of the ditch and dam in question, but this claim was disallowed by the superior court upon the unquestionable ground that the complete disuse of the old dam and all that part of the ditch within the boundaries of the Providencia rancho from 1878 to 1890 extinguished any servitude that might otherwise have existed. (Civ. Code, sec. 811, subd. 4.)

The only other claim of title which the city can make is through the deed of 1845 from De la Osa to Verdugo Feliz, granting the right to divert water on the Providencia rancho sufficient to irrigate the potrero of the Feliz rancho. Unless the

city has deraigned a good title from that source, the findings of the superior court cannot be sustained. In my opinion, there are more fatal defects than one in this title.

In the first place, De la Osa granted only the right to a ditch and flow of water sufficient for the irrigation of the potrero of the Feliz, and, conceding that this right was vested in Howard at the date of his conveyance to the Canal and Reservoir Company in 1868, he by that conveyance reserved it all to himself, so that nothing could have passed to the Canal and Reservoir Company except such rights over and above that granted by De la Osa as Howard and his predecessors may have acquired by adverse user, and all such rights, it is conceded, have been lost to the city by cesser of the use. This, however, is not conclusive of the controversy here, for if the city, as successor of the Canal and Reservoir Company, has the right to maintain the ditch and dam, it does not concern the defendants what may be the respective rights of the city and the successors of Howard in the potrero of the Feliz to the use of the water lawfully diverted. To conclude the city on this point it would, therefore, be necessary to decide in favor of the defendants the much debated question as to the character of the city's tenancy under the lease from the Canal and Reservoir Company, and whether it is still subsisting. In view of our conclusions upon the point next to be considered, we find it unnecessary to determine this question.

The grant from De la Osa, under which the city claims, was made in 1845. In 1849 he conveyed the whole rancho without reservation to Alexander and Mellus, who subsequently petitioned for its confirmation. It was confirmed and patented to them without reservation in 1872. The title thus conveyed to them did not inure to any person claiming under a grant from the original grantee. As against Verdugo Feliz and her successors, Alexander and Mellus acquired the whole legal title to the rancho free of every sort of servitude. At most, she and her successors had an equity which, so far as appears, has never been established or asserted, and has certainly not been alleged or proven in this action. The authorities supporting this view are numerous and uniform. (See *McDonald v. McCoy*, 121 Cal. 55, and authorities cited at 66, 67; *Hartley v. Brown*, 46 Cal. 202, and authorities there cited.)

The title of the city to the easement claimed, therefore, wholly fails, and for this reason the order and judgment of the superior court must be reversed.

It would also be necessary to reverse the order appealed from upon the ground that there is no evidence that it would require fifteen cubic feet per second to irrigate the potrero of the Feliz.

The judgment and order appealed from are reversed and cause remanded.

McFarland, J., Garoutte, J., Temple, J., Henshaw, J., and Harrison J., concurred.