[S. F. No. 17603. In Bank. Aug. 13, 1948.]

THE PEOPLE, Plaintiff and Appellant, v. OCEAN SHORE RAILROAD, INC. (a Corporation) et al., Defendants and Appellants.

Robert W. Kenny, Fred N. Howser, Attorneys General, Everett W. Mattoon, Deputy Attorney General, C. C. Carleton, Holloway Jones, George C. Hadley, Lincoln V. Johnson and Jack M. Howard for Plaintiff and Appellant.

Erskine & Erskine, Nichols & Richard, Edwin H. Williams and A. P. Black for Defendants and Appellants.

GIBSON, C. J.—The state is condemning for highway purposes a strip of land a little more than 3 miles long, lying north of Sharp Park in San Mateo County and formerly used as part of the right of way of a railroad. The defendant Ocean Shore Railroad Company is the successor in interest to the rights of defendant Ocean Shore Railroad, Incorporated, and, hereafter, will be referred to as the sole defendant.

The trial court found that defendant owned the land in question and was also entitled to severance damages to the portion of the right of way running from San Francisco south for about 7½ miles to Sharp Park, but it denied damages to that portion of the right of way running south from Sharp Park.

The jury awarded $485,190 damages for the land condemned and $30,000 severance damages, and a new trial was granted on the sole issue of damages. Both parties have appealed from the judgment, and defendant has also appealed from the order granting a new trial.

The appeals present three principal questions: (1) Did the evidence support the conclusion that defendant owned four of the parcels of land north of Sharp Park? (2) Was defendant entitled to severance damages for the right of way south of Sharp Park? (3) Was the trial court justified in granting a new trial on the sole issue of compensation on the ground of insufficiency of the evidence to sustain the verdict?

Each question involves different factual issues and contentions, and, in order to avoid repetition and facilitate understanding of the various claims, the facts bearing upon each question will be presented under the appropriate heading.

*Ownership of Property North of Sharp Park*

The trial court found that defendant was the owner of the portion of the right of way lying north of Sharp Park and was entitled to severance damages by reason of the taking of part of that right of way. Plaintiff attacks this determination, claiming that it is not supported as to three sections of the property taken or as to a fourth parcel lying between the condemned property and Sharp Park.

As to the first parcel, plaintiff relies on a survey made by its witness, Poss, in 1935, which assertedly shows that the right of way described in defendant's deeds overlapped into and included part of the Gillogley property, which was not owned by defendant's grantors. The disputed area was at most a small ''sliver'' extending along the edge of the right of way, and there was evidence which supports defendant's claim that at the point in question the right of way curved and formed a tangent with the boundary line of the Gillogley property and that there was no overlapping.

The next parcel is referred to as the Globe Wireless property. The prior owner, Hooper, promised to give a deed for the right of way, and in reliance thereon defendant's predecessor took possession and constructed the roadbed. In 1929, Hooper's successor gave a deed to the predecessor of Globe Wireless which excepted ''the right of way of the Ocean Shore Railroad Company.'' Thereafter, in 1934, Hooper's successor gave a quitclaim deed to one Chamberlain, who, in turn, quitclaimed to defendant. This deed did not accurately describe the right of way used by defendant, but in 1937 Hooper's successor gave another deed with the correct description. The third parcel, called the Edgemar property, involves a similar situation. The property was conveyed by Hooper and others in 1906 to one Lawlor, by deed, which excepted ''the right of way of the Ocean Shore Railroad Company.'' The defendant subsequently obtained quitclaim deeds from the successor of Hooper as well as the successor of Lawlor, which accurately described the right of way used and occupied by the railroad. This evidence clearly establishes the ownership of these two parcels in the defendant.

The fourth parcel in dispute is known as the Mary Tobin property. In support of its contention that the property occupied by the railroad as a right of way is not the same as that described in the Tobin deed, plaintiff again relies on the

survey made by Mr. Poss in 1935. He testified that the description in the deed has a tie to the county road on the north and to the ocean on the south, and in using these ties the description does not connect with the roadbed where it enters the Tobin property on the north and south. The witness, however, stated that he did not know the location of the county road or the shore line of the ocean in 1905 when the Tobin deed was executed, and he admitted that both might have changed in the meantime. He testified that the shore line "might vary by several hundred feet." Under this state of the record the trial court was not bound to accept plaintiff's claim that the property occupied by the railroad company as a right of way was not that described in the Tobin deed. Moreover, Mr. Poss testified that because the starting point in the description was uncertain, the deed was indefinite. ▮ It is well settled that a deed indefinite in its terms may be made certain by the conduct of the parties acting under it. (*Gramer* v. *City of Sacramento,* 2 Cal.2d 432, 440 [41 P.2d 543]; *Blume* v. *MacGregor,* 64 Cal.App.2d 244, 251 [148 P.2d 656]; *Fresno Irr. Dist.* v. *Smith,* 58 Cal.App.2d 48, 58 [136 P.2d 382].) ▮ For many years the grantor and the grantee and their successors interpreted the Tobin deed as conveying the property used by the railroad as a right of way, and the trial court was justified in following the practical construction placed on the instrument by the parties.

The determination of the trial court with respect to the ownership of these four parcels is supported by the evidence, and there is no merit in plaintiff's appeal.

### Severance Damages to Property South of Sharp Park

Defendant has appealed from the judgment insofar as it denied severance and consequential damages to the right of way running south from Sharp Park. Section 1248 of the Code of Civil Procedure provides that if the property sought to be condemned constitutes only a part of a larger parcel the court or jury shall assess the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be taken. As we have seen, the part of the right of way condemned by the state was located north of Sharp Park, and it is not disputed that defendant would be entitled to severance damages if the roadbed were contiguous, as would be the case if defendant had a fee title or an existing easement to a right of way through the park. Defendant claims that it acquired title to a right

of way across Sharp Park by adverse possession, prescription, dedication and estoppel. It also claims that it has a right to a franchise across the park, under section 465 of the Civil Code, and that it is entitled to consequential damages because of loss of access to the property south of the park by reason of the taking of the property condemned. Although there is some inconsistency with respect to these claims, we shall consider each separately and determine whether on any theory defendant has such an interest in the Sharp Park property as would entitle it to severance or consequential damages to the property south of the park.

The property in question was owned by Honora Sharp when in 1904, defendant's predecessor entered upon the land and constructed the railroad. No conveyance of any kind was ever received by defendant or its predecessors from Honora Sharp or her successors. In 1916, the ranch was conveyed to the city and county of San Francisco for use as a public park. Operation of the railroad was discontinued in 1920 with the permission of the Railroad Commission, and defendant then removed all tracks from the right of way and sold the rails, rolling stock, and equipment. Thereafter defendant represented in numerous documents filed with the Corporation Commissioner that it was no longer a public utility and that it was not engaged in and did not propose to carry on any business other than that incidental to liquidation.

Railroads, like individuals, may acquire fee title by adverse possession. (See *Churchill* v. *Kellstrom*, 58 Cal.App. 2d 84 [136 P.2d 602] [depot property claimed under deed] ; *Hill* v. *Barner*, 8 Cal.App. 58 [96 P. 111] [land used as stock corral] ; *Smith* v. *Southern Pac. R. R. Co.*, 1 Cal.2d 272 [34 P.2d 713] [land leased for farming].) The general rule, however, is that a railroad which enters without color of title and uses a right of way ordinarily gains merely a prescriptive right to an easement and does not acquire title to the fee. (See cases cited in anno. 127 A.L.R. 517.) The reasons advanced for this rule are that a railroad is authorized to condemn only an easement and not the fee, that usually there is no user beyond the purposes of a right of way and no notice to the owner that any greater right is claimed, and that the right acquired cannot be broader than the claims which the user evidences. If there is no color of title, and only use and possession of the property, the right acquired depends on the extent and character of the use and possession. If

the sole use is as a right of way, whether as a footpath, wagon road, or railroad, the user will ripen into an easement, and it is only where there is some additional type of user or other action which will give notice that the claim is to more than a right of way that the use and permission may ripen into a fee title. (See 127 A.L.R. 517, 518-520.) In the present case, defendant's activities and improvements were consistent with the claim of a mere easement, and there was no additional user or other acts which could be construed as notice to the owner that defendant was claiming a right to the fee.

The cases of *Daniels* v. *Gualala Mill Co.*, 77 Cal. 300 [19 P. 519], and *Smith* v. *Southern Pac. R. R. Co.*, 1 Cal.2d 272 [34 P.2d 713], do not compel a contrary conclusion. In the Daniels case, the property was sold to the mill company, which constructed a railroad. Subsequently, the seller obtained a patent from the United States under the mistaken belief that his prior title from the state was invalid, and then, more than five years after the sale, he attempted to recover possession. Clearly the company held adversely by virtue of the sale to it. In the Smith case, there was no showing of a deed or other color of title, but the right of way was fenced so as to include land which the railroad for a number of years had leased to others for agricultural purposes. The user was not limited to a railroad right of way, and the use for other purposes was sufficient to give ample notice of a claim to the fee. Neither case, therefore, holds that fee title to a right of way may be acquired by adverse possession where there is no color of title and merely user consistent with an easement for a right of way.

Defendant claims, however, that it was in possession under color of title to the fee. It relies on conveyances made in 1911 by which, after foreclosure of a deed of trust and sale to trustees, defendant's predecessor, the Ocean Shore Railway Company, conveyed its interest in the corporate property and franchises to the trustees, who thereafter reconveyed to defendant. These conveyances purported to transfer all "right, title and interest" of the Ocean Shore Railway Company in the "real property, rights of way and terminals within the City and County of San Francisco and the counties of San Mateo and Santa Cruz, in the State of California, and all of the railroads and railroad lines at any time owned by the Ocean Shore Railway Company . . . also all the franchises, rights of way, leases, licenses, consents, easements,

rights, privileges and immunities relating to or appertaining to said railroads or railroad lines . . . it being the intention . . . to grant, transfer and convey . . . all the property and franchises now belonging to [the grantors] . . . and which are now held, owned and possessed by" them.

There was no specific description of the Sharp Park property in the deeds, nor was there any specification of the nature or extent of the interest sought to be conveyed in any parcel of property. ■ Where, as here, the railroad would ordinarily acquire by adverse user only an easement, and the deeds clearly show that the intent was to convey only the interests actually owned by the predecessor company, it cannot be said that they purported to transfer a fee in the Sharp Park property. Although the deeds were sufficient to transfer to defendant whatever interest, if any, the predecessor had in the right of way across Sharp Park, they did not constitute color of title to a fee in that parcel.

■ The asserted fact that defendant and its predecessor paid a gross receipts tax to the state and thereby discharged the duty to pay any taxes levied and assessed against the property is not sufficient by itself to establish adverse possession, since the payment of taxes is merely one of the elements which must be proved. (See Code Civ. Proc., § 325.)

Defendant also claims that its predecessor acquired an easement by prescription across Sharp Park for railroad purposes, and it is not disputed that the record would support a finding to this effect. There is evidence, however, that any such right of way was lost by abandonment or nonuser. In 1920, the company stopped running its trains, removed its tracks and sold its rails, rolling stock, and other equipment. It represented to the Corporation Commissioner on a number of occasions, some as late as 1930, that it was no longer a public utility and did not propose to engage in any business other than that incidental to liquidation.

■ An easement acquired by a utility for a public purpose is terminated by abandonment of that purpose, and whether or not there has been such an abandonment is ordinarily a question of fact. (*Slater* v. *Shell Oil Co.*, 39 Cal.App. 2d 535, 549-550 [103 P.2d 1043], and cases there cited.) Section 811 of the Civil Code provides that "[a] servitude is extinguished: . . . 3. By the performance of any act upon either tenement, by the owner of the servitude, or with his assent, which is incompatible with its nature or exercise.

418

. . .'' The inconsistent act, of course, must be material and permanent, as distinguished from something that is occasional and temporary. (See *Lux* v. *Haggin*, 69 Cal. 255 [4 P. 919, 10 P. 674], 28 C.J.S. 716-717.)

▮ It was for the trier of fact to determine whether there was a bona fide intent to preserve the right of way for actual railroad use, and the court could properly conclude that the acts and conduct of defendant were incompatible with the continued exercise of the easement, that the discontinuance of the line was not merely temporary, and that the right of way was abandoned and the easement terminated. (Cf., *Home R. E. Co.* v. *Los Angeles Pac. Co.*, 163 Cal. 710 [126 P. 972]; *Tamalpais etc. Co.* v. *Northwestern Pac. R. R. Co.*, 73 Cal.App. 2d 917, 931-932 [167 P.2d 825]; *Norton* v. *Duluth Transfer Ry. Co.*, 129 Minn. 126 [151 N.W. 907, Ann.Cas. 1916E 760]; *Jones* v. *VanBochove*, 103 Mich. 98 [61 N.W. 342]; see *California etc. Railroad Co.* v. *Mecartney*, 104 Cal. 616, 623 [38 P. 448].)

Defendant contends, however, that it was decided in *Ocean Shore Railroad Co.* v. *Spring Valley W. Co.*, 87 Cal.App. 188 [262 P. 53], that there was no intent to abandon the right of way and that this decision is res judicata of the issue. (Cf., *Ocean Shore R. R. Co.* v. *Spring Valley W. Co.*, 218 Cal. 86 [21 P.2d 588]; *Midstate Oil Co.* v. *Ocean Shore R. R. Co.*, 93 Cal.App. 704 [270 P. 216].) In the Spring Valley case, commenced approximately two years after discontinuance of service, defendant was seeking to quiet its title to a portion of the right of way which it had acquired ''by grant in perpetuity upon payment of full value of the land to be occupied. . . .'' (87 Cal.App. at p. 191.) The court held that, in view of the character of the right and the manner of acquisition, it could not be said that an intent to abandon had been established because ''the whole course of dealing by [Ocean Shore] with the right of way as shown by its uncontroverted evidence negatives the inference drawn from its public acts, and is not inconsistent with those acts.'' (87 Cal.App. at p. 192.)

▮ It is unnecessary for us to determine the correctness of the decision because even though it is erroneous, that fact alone will not prevent the application of res judicata. (See *Greenfield* v. *Mather, ante,* p. 23 [194 P.2d 1].) ▮ The doctrine does not apply, however, where there are changed conditions and new facts which did not exist at the time of the prior judgment. (See *Guardianship of Snowball,* 156

Cal. 240, 242 [104 P. 444]; *Timm v.McCartney*, 9 Cal.App.2d 230, 235 [49 P.2d 315]; 15 Cal.Jur. §§ 201, 214, pp. 154, 179.) In the present case the facts are not the same, and the Spring Valley decision is not res judicata. Here the railroad operation was discontinued more than 14 years prior to the commencement of the action, there has been no resumption of service, and there was evidence that increased motor travel and other factors had made it economically infeasible to operate a railroad. Morever, there were continued representations that the company was not a public utility, that it was in liquidation, and that it did not intend to engage in business other than that incidental to liquidation. We thus have evidence of subsequent facts which, when considered with the prior circumstances, would support a finding of intent to abandon even though we accept as controlling the determination of that case that there had been no abandonment when that action was commenced in 1922.

 Moreover, it is not necessary to show an intent to abandon in order to prove loss of an easement acquired by prescription. Civil Code, section 811, subdivision 4, provides that a servitude is extinguished "when the servitude was acquired by enjoyment, by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment." The decisions interpreting this subdivision have without discussion applied it as operating to terminate such an easement by nonuser alone. (*Garbarino v. Noce*, 181 Cal. 125, 130 [183 P. 532, 6 A.L.R. 1433]; *City of Los Angeles v. Pomeroy*, 125 Cal. 420, 425 [58 P. 69]; *Drake v. Russian River Land Co.*, 10 Cal.App. 654, 666 [103 P. 167]; cf. *McRose v. Bottyer*, 81 Cal. 122, 125 [22 P. 393].) In a number of cases involving easements by grant, where an intent to abandon is necessary, the rule that an easement gained by user may be lost by mere disuse has been recognized but held not applicable. (*People v. Southern Pacific Co.*, 172 Cal. 692, 700-701 [158 P. 177]; *Copeland v. Fairview Land etc. Co.*, 165 Cal. 148, 166-167 [131 P. 119]; *Storrow v. Green*, 39 Cal.App. 123, 126 [178 P. 339]; *Gardner v. San Gabriel Valley Bank*, 7 Cal.App. 106, 111 [93 P. 900]; cf. *Glatts v. Henson*, 31 Cal.2d 368, 371 [188 P.2d 745].)

 The record does not support defendant's position that the nonuser was not due to any voluntary action on its part but was compelled by the Spring Valley and Joint Highway

litigation, which lasted from 1922 until 1933. (See *Ocean Shore R. R. Co.* v. *Spring Valley W. Co.*, 87 Cal.App. 188 [262 P. 53] ; *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, 128 Cal.App. 743 [18 P.2d 413].) The tracks were removed, and the operation of trains was discontinued more than a year prior to institution of the Spring Valley action, and it does not appear that defendant was prevented by that litigation from using the right of way. The Joint Highway action was not commenced until 1930, and its pendency could not have prevented the use of the right of way prior to that date. Under all the circumstances, including the facts that defendant, after terminating its railroad service in 1920, sold its rails, rolling stock, and equipment, and publicly represented on numerous occasions that it was not a public utility but was engaged solely in liquidation, the trial court could properly have concluded that the nonuser was voluntary.

It is next contended that defendant acquired title to a right of way through Sharp Park by implied dedication by reason of user with the consent or acquiescence of the owner. The common law doctrine of dedication, however, applies only between the owner and the public, and the public must be a party to every dedication. (9 Cal.Jur. 7.) It is not a mode of conferring a private property right in land, and the general rule is that there cannot be an implied or common law dedication of land to a railroad company by virtue of user with the consent or acquiescence of the owner. (*Watson* v. *Chicago, M. & St. P. Ry. Co.*, 46 Minn. 321 [48 N.W. 1129] ; *Elyton Land Co.* v. *South & N. Ala. R. Co.*, 95 Ala. 631 [10 So. 270, 271] ; *Lake Erie & W. R. Co.* v. *Whitham*, 155 Ill. 514 [40 N.E. 1014, 1018, 46 Am.St.Rep. 355, 28 L.R.A. 612] ; *Pittsburgh C. C. & St. L. Ry. Co.* v. *Warrum*, 42 Ind.App. 179 [82 N.E. 934, 937, 84 N.E. 356] ; *Quinn* v. *Pere Marquette Ry. Co.*, 256 Mich. 143 [239 N.W. 376] ; *Minneapolis etc. Ry.* v. *Marble*, 112 Mich. 4 [70 N.W. 319] ; *Louisville St. L. & T. Ry. Co.* v. *Stephens*, 96 Ky. 401 [29 S.W. 14, 49 Am.St.Rep. 303] ; *Todd* v. *Pittsburg etc. R. Co.*, 19 Ohio 514; 4 Tiffany, Real Property (3d ed.), [1939], § 1098, p. 333; 2 Elliott on Railroads (3d ed.), [1921], § 1172, pp. 650, 654; cf., *Morgan* v. *Chicago & A. R. Co.*, 96 U.S. 716 [24 L.Ed. 743] [dedication by plat under statute] ; *Texas & N. O. Ry.* v. *Sutor*, 56 Tex. 496.)

 The defendant, however, relies on cases which hold that where property is devoted to a public use by a railroad

or other public utility, with the consent or acquiescence of the owner, the use is thereafter in the interests of the public, and the owner will not be allowed to maintain ejectment or to interfere with the possession by the utility, but will be limited to an action for damages for the taking of the property. (See *Southern Cal. Ry. Co.* v. *Slauson*, 138 Cal. 342, 345 [71 P. 352, 94 Am.St.Rep. 58]; *Fresno etc. Co.* v. *Southern Pac. etc. Co.*, 135 Cal. 202 [67 P. 773]; *Miller & Lux* v. *Enterprise C. etc. Co.*, 169 Cal. 415, 424-428 [147 P. 567]; *Gurnsey* v. *Northern Cal. Power Co.*, 160 Cal. 699, 709 [117 P. 906, 36 L.R.A.N.S. 185].) While it has been stated that such conduct will be regarded as a dedication to the particular public use (see *Miller & Lux* v. *Enterprise Canal Co., supra,* at p. 430; *Southern Cal. Ry. Co.* v. *Slauson, supra,* at p. 345; *Conaway* v. *Yolo Water & Power Co.,* 204 Cal. 125, 131 [266 P. 944, 58 A.L.R. 674]), the cases are not based on the theory of a gift or donation, and the rule is not one of true dedication. Instead, it is a rule of public policy designed to protect the public interest in the continuance of the service. (*Gurnsey* v. *Northern Cal. Power Co., supra,* 160 Cal. 699, 712.) When that interest has intervened, upon the establishment of the utility service, public policy requires that the owner be denied the right to disrupt the service or to interfere with the right of the public to have the service continued. ▇▇▇ Any right of the utility to be free from interference from the owner, however, having been acquired for the protection of the public interest, is conditioned upon the continuance of service. Where, as here, the tracks have been removed and the service terminated for over 14 years, and the company is no longer a utility, it cannot claim the benefit of a rule which is based solely upon user of the property for railroad purposes for the benefit of the public.

Claim is also made that defendant has title to a right of way by estoppel. It is asserted that Honora Sharp and her successors stood silently by while the railroad was being built and operated, and while the conveyances were made which transferred the railroad to defendant, that such conduct induced defendant to believe in and rely on the existence of an agreement, license, interest or title of some kind in its predecessor. Defendant is not entitled, under the doctrine of estoppel, to claim a fee or any right greater than an easement. ▇▇▇ An estoppel may arise from silence, but only where there is a duty to speak, and where the party upon whom such

duty rests has an opportunity to speak and, knowing that the circumstances require him to speak, remains silent. (*Merry v. Garibaldi,* 48 Cal.App.2d 397, 401 [119 P.2d 768].) ▮ The present case does not come within this rule so as to entitle defendant to claim that it had anything greater than an easement across Sharp Park. It does not appear that defendant was entitled to believe that it had a fee title to the right of way, or that Honora Sharp or her successors had any knowledge or notice of any such claim or belief on the part of defendant or its predecessor. Any claim to an interest less than a freehold was lost when the tracks were torn up and the roadbed abandoned for railroad purposes.

▮ As a further ground for the allowance of severance damages, defendant asserts that it has a right to a franchise across Sharp Park under section 465 of the Civil Code and hence that the portions of the roadbed north and south of the park should be regarded as contiguous. Two public roads ran through the park, one of which paralleled the roadbed, but there is no suggestion that either road was ever used for the operation of trains. Subdivision 5 of section 465 provides that every railroad shall have power ''to construct their roads across, along or upon any . . . street, avenue or highway . . . which the route of its road intersects, crosses or runs along. . . .'' This section does not grant franchise rights and is at most a mere offer which must be accepted by user. Until such acceptance by user, no right vests under it. (*San Pedro etc. R. Co.* v. *Long Beach,* 172 Cal. 631, 636 [158 P. 204] ; see *Santa Cruz* v. *Southern Pac. R. R. Co.,* 163 Cal. 538, 548 [126 P. 362] ; cf. *Los Angeles* v. *Southern Pac. R. R. Co.,* 157 Cal. 363, 369 [108 P. 65] ; *Simons Brick Co.* v. *City of Los Angeles,* 182 Cal. 230, 235 [187 P. 1066] ; *City of Oakland* v. *Hogan,* 41 Cal.App.2d 333, 358 [106 P.2d 987].)

▮ In the present case there was no acceptance of the offer by user of the road, and hence there was no existing franchise to use the road. Moreover, any right to accept the offer was lost when defendant took up its tracks and ceased to be a public utility. (See *County of Los Angeles* v. *Southern Cal. Tel. Co., ante,* p. 378 [196 P.2d 773].) Defendant therefore cannot rely on cases such as *Russell* v. *Sebastian,* 233 U.S. 195 [34 S.Ct. 517, 58 L.Ed. 912], and *Postal Tel.-Cable Co.* v. *Railroad Com.,* 200 Cal. 463 [254 P. 258], in which the public utilities were going concerns and were under a duty to extend their services. Nor does a contrary conclusion fol-

low from the statement in *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, 128 Cal.App. 743, 762 [18 P.2d 413], that "such railroad could have been run over the portion of the property previously granted for highway purposes as contemplated by subdivision 5 of section 465 of the Civil Code." That case did not involve severance damages, but the value of the land taken, and the court was following the rule that the prospect of joining separate parcels for a particular use may be a proper element in determining that value. As we shall see, this rule does not apply to severance damages, and an award therefor is not proper where there is no existing unity of use and merely a prospect of such a joinder. Under the circumstances, therefore, defendant did not have any existing franchise right which would permit an award of severance damages.

It is next urged that the whole roadbed is susceptible to a common use which is inherent in its nature, that the parcels north and south of Sharp Park were inseparable in use, that there was a unity of use and that the whole roadbed, although not physically contiguous, should be considered in the nature of a single parcel for purposes of severance damages. Under section 1248 of the Code of Civil Procedure, however, contiguity is ordinarily essential, and the owner is not entitled to severance damages for injury to other separate and independent parcels. (See *City of Oakland* v. *Pacific Coast Lumber etc. Co.*, 171 Cal. 392, 398 [153 P. 705]; *Atchison etc. Ry. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505, 520 [57 P.2d 575]; *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708, 745-746 [275 P. 228].) There may be a right to an award of severance damages in some cases where the property, though not physically contiguous, is being devoted to an existing unity of use. (See *Southern Calif. Edison Co.* v. *Railroad Com.*, 6 Cal.2d 737 [59 P.2d 808]; *Monongahela Navigat'n Co.* v. *United States*, 148 U.S. 312 [13 S.Ct. 622, 37 L.Ed. 463].) But such damages are ordinarily limited to contiguous property, and the mere fact that there is a possible or prospective use of separate properties as a unit, or that they are susceptible to a common use, will not justify the allowance of severance damages. (See *East Bay Mun. Utility Dist.* v. *Kieffer*, 99 Cal.App. 240, 248 [278 P. 476, 279 P. 178]; 2 Lewis on Eminent Domain (3d ed.), [1909], § 697, p. 1207; 2 Nichols on Eminent Domain (2d ed.), [1917], § 241, p. 740.)

424

■ There are cases which hold that, where the highest and best use of separate parcels will involve their integrated unitary use, such prospective use may be considered in fixing the value of the property taken if a joinder of the parcels is reasonably practicable, and the nature of the case does not preclude the possibility of a union without the exercise of eminent domain. (*City of Pasadena* v. *Union Trust Co.*, 138 Cal.App. 21, 25-27 [31 P.2d 463] ; *City of Stockton* v. *Ellingwood*, 96 Cal.App. 708, 728 et seq. [275 P. 228] ; *City of Stockton* v. *Vote*, 76 Cal.App. 369, 405-407 [244 P. 609].) That rule, however, has no application to the allowance of severance damages. The possibility of joinder of parcels for a specified use is a factor that might be weighed by a prospective purchaser, if the joinder were reasonably practicable, and hence is an element to be considered in determining the value of the property taken, but it has no bearing on the allowance of severance damages. ■ Under section 1248 of the Code of Civil Procedure, the primary test for severance damages is contiguity, and while an existing unity of use may warrant an award, none can be allowed where, as here, the property is not contiguous, and there is merely a possible or prospective, and not a presently existing, unity of use. (See *City of Oakland* v. *Pacific Coast Lumber etc. Co.*, supra, 171 Cal. 392, 398 ;*Atchison etc. Ry Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505, 520 [57 P.2d 575] ; *East Bay Mun. Utility Dist.* v. *Kieffer*, 99 Cal. App. 240, 248, 260 [278 P. 476, 279 P. 178].)

■ There is no merit in the contention that defendant had a right to consequential damages to the property south of the park. It is asserted that a railroad is like a highway, and that the taking of the property to the north cut off access to the roadbed to the south because the part taken furnished the only route for a railroad from San Francisco along the coast, and it is argued that the right to consequential damages is not limited by section 1248 of the Code of Civil Procedure and that such damages should have been allowed under the decisions in *Rose* v. *State of California*, 19 Cal.2d 713 [123 P.2d 505] ; *Bacich* v. *Board of Control*, 23 Cal.2d 343 [144 P.2d 818] ; *Beals* v. *City of Los Angeles*, 23 Cal.2d 381 [144 P.2d 839] ; and *People* v. *Ricciardi*, 23 Cal.2d 390 [144 P.2d 799]. Those cases, however, involved interference with an abutter's easement of access by reason of the taking or obstruction of the means of access. In the present case the situation is quite different, and there was no such interference

by the state. Defendant was not an abutting owner, and, as we have seen, its right of way to the north was cut off, not by the taking of the property by the state, but rather by the termination of the railroad use and the resulting loss of any right of way through Sharp Park.

It follows that the judgment must be affirmed insofar as it denies the right to recover severance or consequential damages for the property south of Sharp Park.

### Order Granting New Trial as to Damages

The trial court granted plaintiff's motion for a new trial as to damages on the ground that the evidence was insufficient to sustain the verdict. On appeal from that order defendant's principal contention is that there was no real conflict in the evidence and no competent evidence which would have supported a lower verdict than the one given. It is also claimed that evidence which would have supported the award was erroneously excluded and that it was improper for the judge to grant the motion because he did not view the property, whereas the jury did.

The jury awarded defendant $485,190 as compensation for the taking of the property and $30,000 as severance damages to the roadbed north of Sharp Park. There was widely divergent testimony as to market value. Plaintiff's witnesses gave opinions ranging from $3,228.50 to $5,190, while defendant's witnesses testified that the value was between $800,000 and $1,376,000. It is claimed that the apparent conflict in the evidence is not one in fact, because plaintiff's witnesses assertedly disregarded its value for its highest and best use which, defendant says, was for railroad purposes.

Under section 1249 of the Code of Civil Procedure the measure of compensation for property taken is its market value, which is to be determined by a consideration of all the uses to which it is adapted and for which it is available. (*Long Beach City H. S. Dist.* v. *Stewart,* 30 Cal.2d 763 [185 P.2d 585, 173 A.L.R. 249] ; *Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 412 [104 P. 979] ; *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.,* 128 Cal.App. 743, 755 [18 P.2d 413] ; *City of Stockton* v. *Ellingwood,* 96 Cal.App. 708 [275 P. 228].) In this connection, the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not as the measure of value, but to the extent that

the prospect of such use affects the market value of the land; however, elements affecting value which, while possible, are not reasonably probable, should be excluded. (*Olson* v. *United States,* 292 U.S. 246, 255-257 [54 S.Ct. 704, 78 L.Ed. 1236]; *Cameron Development Co.* v. *United States,* 145 F.2d 209, 210.) Accordingly, where it is not shown that a suggested use would be profitable, or where it appears that the operations cannot be carried on except at a loss, the prospect of use for such a purpose is not a proper element of value. (See *In re Elevated Railroad Structures,* 229 App.Div. 617 [243 N.Y.S. 665, 672]; *In re Elevated Structures in Forty-second St.,* 265 N.Y. 170 [192 N.E. 188, 191]; *Roberts* v. *New York City,* 295 U.S. 264, 284 [55 S.Ct. 689, 79 L.Ed. 1429]; *Cameron Development Co.* v. *United States,* 145 F.2d 209, 210.)

 In the present case there seems to be little doubt as to the physical adaptability of the property for railroad use, but plaintiff's witnesses were also entitled to consider whether its use for such purposes was economically feasible. Any prospective purchaser, in estimating the value of the property for railroad purposes, would consider the economic feasibility of that use, and it is therefore a factor which has an important bearing on the market value of the property. In this connection, it appears that neither defendant nor its predecessor had been able to operate the railroad profitably, although they attempted to do so for about 15 years. Plaintiff's experts testified that because of increased motor truck competition and other factors it would be impossible to operate a railroad on this line at a profit. Moreover, although there was some evidence to the effect that certain parties had obtained an option to purchase the railroad with a view to reestablishing service, it did not appear that any attempted rehabilitation would be successful, and plaintiff's evidence as to lack of economic feasibility indicated that it would not. In view of the testimony that the tracks had been taken up, that no trains had been operated since 1920, that parts of the roadbed had been washed out and eroded, and that the railroad would not be economically feasible, it cannot be said as a matter of law that the evidence of these witnesses was incompetent because they treated the property as without value for railroad purposes.

 Defendant also claims that the testimony of plaintiff's witnesses was incompetent because they had not seen

the property and were not familiar with its physical condition until after it had been altered by construction of the highway. It is argued that their opinions should have been founded on a personal knowledge of the property rather than upon hearsay or hypothetical reconstruction of the railroad right of way. Two of plaintiff's expert witnesses, however, had seen the property both before and after it was taken and changed by the state, and the fact that their personal knowledge of the property as it previously existed was not based on a detailed examination merely affected the weight of their testimony. ▇▇▇ Moreover, it clearly was not necessary that the witnesses testifying as to economic feasibility of operating a railroad should have had personal knowledge of the physical condition of the property prior to its taking.

▇▇▇ It thus appears that there was a conflict in the evidence. On the motion for a new trial it was for the trial court to determine the weight to be given the testimony, and it was not required to accept the opinion of any witness as to value. (*Brooks* v. *Metropolitan Life Ins. Co.*, 27 Cal.2d 305, 307 [163 P.2d 689] ; *Estate of Green*, 25 Cal.2d 535, 542 [154 P.2d 692] ; see *Zimmer* v. *Kilborn*, 165 Cal. 523, 525 [132 P. 1026, Ann.Cas. 1914D 368] ; *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, 128 Cal.App. 743, 762 [18 P.2d 413].)

▇▇▇ Defendant next contends that, accepting the testimony of plaintiff's witnesses that the roadbed and improvements had no market value for railroad purposes, the proper measure of value was reproduction cost less depreciation. It argues that there was no substantial conflict in the evidence as to reproduction cost, which was about three times what was allowed by the jury, and that, accordingly, it was error to grant a new trial. We cannot agree, however, that reproduction cost is the proper measure of compensation.

In a number of cases it has been held proper to admit evidence of reproduction cost as an aid to determining value, especially when the property is adapted to a particular enterprise and there are ordinarily no willing buyers and hence no market for that type of property. (See Orgel, Valuation Under Eminent Domain, pp. 586-588.) It has also been held that reproduction cost is a proper test where there is a taking of a going concern with a view to continuing the operation. (See *In re United States Commission*, 295 F. 950 [54 App. D.C. 129].) The general rule, however, is that the proper measure of damages is not the market value of the land plus

the reproduction cost of the improvements, but the market value of the property as improved, in view of all the uses to which it is adaptable and available. (*Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, 128 Cal.App. 743, 759 [18 P.2d 413] ; see 2 Nichols on Eminent Domain (2d ed.), [1917], § 447, p. 1174; 2 Lewis, Eminent Domain (3d ed.), [1909], § 706, p. 1227 et seq.; Orgel on Valuation Under Eminent Domain [1936], § 187, p. 586 ; *Cohen* v. *St. Louis, F. S. & W. R. Co.*, 34 Kan. 158 [8 P. 138, 142, 55 Am.Rep. 242] ; *Jacksonville & S. E. R. Co.* v. *Walsh*, 106 Ill. 253 ; *Orleans & J. Ry. Co.* v. *Jefferson & L. P. Ry. Co.*, 51 La.Ann. 1605 [26 So. 278] ; *De Buol* v. *Freeport & M. R. Ry. Co.*, 111 Ill. 499.)

Defendant relies on a statement in *City of Los Angeles* v. *Klinker*, 219 Cal. 198, 211-212 [25 P.2d 826, 90 A.L.R. 148], to the effect that the case of *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.*, seems to be an illustration of the exception to the general rule that market value is the proper measure of compensation. The court in the Joint Highway case, however, did not adopt the test of reproduction cost, but proceeded on the basis of market value. (See 128 Cal.App. at pp. 756, 759-760.)

█ The mere fact that a structure or improvement may have cost a certain amount, or that it would cost that amount to reproduce it, is not conclusive proof of its value in the market, or that a purchaser would be willing to pay that sum. Moreover, a structure or improvement may add little or nothing to the value unless it is of such a character that it is adapted to some prospective use which affects the market value of the land. █ In the present case, in view of all the various factors which the court was under a duty to consider in passing on the sufficiency of the evidence, including the conflict in testimony as to probability and economic feasibility of use for railroad purposes, it clearly appears that the granting of the motion was a matter within the proper exercise of the trial court's discretion.

█ There is no merit in defendant's contention that the court erred in granting a new trial because evidence which would have supported the judgment was erroneously excluded. ''The exclusion of competent or relevant evidence might be a good ground for reversing an erroneous judgment, but it should not be considered for the purpose of restoring a judgment after it has been set aside by the trial court on motion

for a new trial.'' (*Estate of Green,* 25 Cal.2d 535, 544 [154 P.2d 692].)

The fact that the trial judge did not accompany the jury when it visited the property did not preclude him from granting a new trial on the ground of insufficiency of the evidence. (*Southern Cal. Edison Co.* v. *Gemmill,* 30 Cal.App.2d 23, 27-28 [85 P.2d 500].) Moreover, it appears that defendant is in no position to raise the point on appeal. The trial judge stated that he did not wish to visit the property but that he would do so unless the parties waived his absence, and counsel for the parties then agreed that the judge should not be required to make the trip. Defendant thus acquiesced in this procedure and must be deemed to have waived the right to claim error because of the absence of the trial judge. (Cf., *County of San Luis Obispo* v. *Simas,* 1 Cal.App. 175, 182 [81 P. 972].)

### *Costs on Appeal*

The final question relates to the allowance of costs on appeal. When this cause was pending in the District Court of Appeal, the parties stipulated, without prejudice to the right of defendant to reopen the matter if a hearing should be granted by this court, that the judgment on appeal should be modified to provide that each party should assume its own costs and that plaintiff should pay to defendant in addition the sum of $1,250 on account of defendant's costs. This seems to be a fair apportionment of costs under the circumstances, and, the matter not having been reopened, no reason appears why the same apportionment should not be made at this time.

The judgment and the order granting a new trial on the issue of damages are affirmed. Each party shall bear its own costs of appeal, and in addition plaintiff shall pay the sum of $1,250 on account of defendant's costs.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.